# United States Court of Appeals for the Federal Circuit

2007-5034

DORY ZATUCHNI,
Executrix of the Estate of
E. BARBARA SNYDER, deceased,

Petitioner-Appellee,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent-Appellant.

Kevin P. Conway, Conway, Homer & Chin-Caplan, P.C., of Boston, Massachusetts, argued for petitioner-appellee. On the brief was Ronald C. Homer.

Glenn A. MacLeod, Senior Trial Counsel, Torts Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellant. With him on the brief were Peter D. Keisler, Assistant Attorney General, Timothy P. Garren, Director, Mark W. Rogers, Deputy Director, and Gabrielle M. Fielding, Assistant Director.

Appealed from: United States Court of Federal Claims

Judge Thomas C. Wheeler

# United States Court of Appeals for the Federal Circuit

2007-5034

DORY ZATUCHNI,
Executrix of the Estate of
E. BARBARA SNYDER, deceased,

Petitioner-Appellee,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent-Appellant.

Appeal from the United States Court of Federal Claims in 94-VV-58, Judge Thomas C. Wheeler.

_____

DECIDED: February 12, 2008

_____

Before DYK, MOORE, <u>Circuit Judges</u>, and COTE, <u>District Judge</u>.[*]

Opinion for the court filed by <u>District Judge</u> COTE. Opinion concurring in the result and dissenting from the majority filed by <u>Circuit Judge</u> DYK.

COTE, <u>District Judge</u>.

 The Secretary of Health and Human Services ("government") appeals the judgment of the Court of Federal Claims awarding petitioner-appellee Dory Zatuchni ("Zatuchni") (in her capacity as executrix of the estate of E. Barbara Snyder ("Snyder"))

_____

 [*] Honorable Denise Cote, District Judge, United States District Court for the Southern District of New York, sitting by designation.

$804,323.90 under the National Vaccine Compensation Program ("Program"). Zatuchni v. Sec'y of Health & Human Servs., 73 Fed. Cl. 451 (2006). The government concedes that $250,000 was properly awarded as a death benefit pursuant to 42 U.S.C. § 300aa-15(a)(2), but asserts that the remaining $554,323.90, representing compensation pursuant to 42 U.S.C. § 300aa-15(a)(1), (3), and (4) for vaccine-related injuries suffered by Snyder prior to her death, may not be awarded because the death benefit is the sole remedy for a petitioner who dies as a result of the administration of a vaccine. We affirm.

## BACKGROUND

Snyder received a measles, mumps, and rubella (MMR) vaccine on February 10, 1992, at the age of 45. The Court of Federal Claims summarized the events that followed her vaccination:

> Within two weeks of the vaccination, Ms. Snyder developed . . . a rash, swollen lymph nodes, a fever, and severe pain throughout her joints and muscles. Soon thereafter, Ms. Snyder experienced other symptoms, which her physicians diagnosed as continuing chronic arthralgia and [fibromyalgia syndrome (FMS)] attributable to the rubella portion of the MMR vaccination.[1] Over the next 13 years, Ms. Snyder's physical condition deteriorated rapidly and significantly. . . . [She] found it impossible to continue working . . . [e]ventually[] . . . ambulated only with a walker, . . . [and] required a nurse's aid to assist her with daily living functions.

Zatuchni v. Sec'y of Health & Human Servs., 73 Fed. Cl. 451, 452-53 (2006).

On January 31, 1994, Snyder filed a petition for compensation with the Program. As detailed in Snyder v. Secretary of Health & Human Services, No. 94-58V, 2005 WL

---

[1] "'Arthralgia' means joint pain." Snyder v. Sec'y of Health & Human Servs., No. 94-58V, 2005 WL 1230787 at *2 n.5 (Fed. Cl. May 6, 2005) (citing Dorland's Illustrated Medical Dictionary 147 (27th ed. 1988)). FMS is a syndrome characterized by "pain in many different fibrous tissue areas of the[] bod[y,]" without an obvious physical cause. Id. at *13.

1230787, at *3-*5 (Fed. Cl. Spec. Mstr. May 6, 2005), the government conceded on May 2, 1994, that Snyder's chronic joint pain was caused by the MMR vaccination; Snyder, however, also sought compensation for her other symptoms, and obtained several stays of her petition in order to gather expert testimony in support of her claims and to pursue settlement discussions with the government.[2] As a result of these delays, Snyder's petition remained pending before the special master until May 6, 2005, when her petition was denied for failure to demonstrate that the MMR vaccination caused her symptoms. Id. at *20.

Neither party was aware, however, that Snyder had died on April 28, 2005, several days before the special master's decision. Following the resolution of a brief procedural challenge pursuant to Rule 25(a)(1) of the Rules of the Court of Federal Claims ("RCFC"), Zatuchni was substituted as a party for Snyder and appealed the special master's determination. Snyder v. Sec'y of Health & Human Servs., 69 Fed. Cl. 390 (2006).

On February 9, 2006, the Court of Federal Claims reversed the special master's determination, concluding that Snyder had met her burden to demonstrate that her symptoms were caused by the vaccine. The court remanded the case to the special master to determine the amount of compensation to which her estate was entitled and

---

[2] Also around this time, in response to the filing of several similar petitions, the special master assigned to Snyder's petition was directed to conduct a general inquiry into the causal relationship between various joint-related conditions and rubella vaccinations. The special master made findings and issued reports in 1993 and 2002 that were subsequently applied to resolve petitions alleging that rubella vaccinations had caused joint-related symptoms, including Snyder's petition. See Snyder, 2005 WL 1230787, at *3-*5. See generally Snyder v. Sec'y of Health & Human Servs., Nos. 94-58V et al., 2002 WL 31965742 (Fed. Cl. Spec. Mstr. Dec. 13, 2002).

whether Snyder's death was vaccine-related. <u>Zatuchni v. Sec'y of Health & Human Servs.</u>, 69 Fed. Cl. 612, 622-25 (2006).

The special master issued a decision on remand on May 10, 2006, concluding that Snyder's death had been vaccine-related, and that her estate was therefore entitled to the $250,000 death benefit provided for under 42 U.S.C. § 300aa-15(a)(2). <u>Zatuchni v. Sec'y of Health & Human Servs.</u>, No. 94-58V, 2006 WL 1499982, at *6 (Fed. Cl. May 10, 2006). The special master also found that Snyder would have been entitled to compensation in the amount of $554,323.90 for her vaccine-related injuries during her lifetime, including actual expenses incurred, pain and suffering, and lost income between the time of the vaccination and her death. <u>Id.</u> at *7-*8. The special master concluded that as a matter of law, however, such compensation could not be paid to her estate because her vaccine-related injury claims did not survive her death. <u>Id.</u> at *9-26. Accordingly, the special master awarded appellant $250,000.

On appeal, the Court of Federal Claims reversed the special master's determination as to the claim for pre-death vaccine-related injury compensation. <u>Zatuchni v. Sec'y of Health & Human Servs.</u>, 73 Fed. Cl. 451, 459 (2006). It concluded that Snyder's injury claims did not abate upon her death, and accordingly awarded her estate $804,323.90, consisting of the $250,000 death benefit and compensation for injuries during her lifetime in the amount of $554,323.90. <u>Id.</u> The government appeals the award of the latter amount. We have jurisdiction pursuant to 42 U.S.C. § 300aa-12(f).

DISCUSSION

The instant appeal requires us to determine whether the petitioner may receive the compensation for medical expenses, lost wages, and pain and suffering provided for under 42 U.S.C. § 300aa-15(a)(1), (3) and (4), in addition to the $250,000 death benefit provided for under § 300aa-15(a)(2). The opinion below held that such compensation may be awarded; the government contends on appeal that such compensation may not be awarded because the death benefit is the sole remedy for a petitioner who dies as a result of the administration of a vaccine, and that claims for compensation under § 300aa-15(1), (3), and (4) do not survive the death of a vaccine-injured person under any circumstances.

The question of whether compensation under these subsections may be paid to the petitioner's estate following her vaccine-related death presents a question of statutory interpretation, and requires an analysis of the text and structure of the applicable statute. Cf. Seymour v. Principi, 245 F.3d 1377, 1379 (Fed. Cir. 2001) (addressing the survivability of claims for veteran's benefits under 38 U.S.C. § 1151); Richard v. West, 161 F.3d 719, 722 (Fed. Cir. 1998) ("[Claimant's] statutory argument cannot overcome the clear intent expressed by the structure and language of the statutory scheme at issue--that a veteran's claim to disability benefits terminates at death."). We review de novo the judgment of the court below on this question. Markovich v. Sec'y of Health & Human Servs., 477 F.3d 1353, 1355-56 (Fed. Cir. 2007); see also 42 U.S.C. § 300aa-12(e)(2)(B).

The Program was established by the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, tit. III, 100 Stat. 3743, 3755 (1986) ("Vaccine Act"). As we have previously noted,

> Congress instituted this compensatory program because the traditional civil tort actions against vaccine manufacturers were producing undesirable results both with respect to the victims and the vaccine industry. Congress found that the traditional tort system was not working for victims because it resulted in lengthy delays, high transaction costs, and sometimes no recovery. Similarly, the high cost of litigation and difficulty of obtaining insurance was undermining incentives for vaccine manufacturers to remain in the vaccine market. In sum, Congress was concerned with the instability and unpredictability in the childhood vaccine market.

Lowry v. Sec'y of Health & Human Servs., 189 F.3d 1378, 1381 (Fed. Cir. 1999) (citing H.R. Rep. 99-908, at 6-7, reprinted in 1986 U.S.C.C.A.N. 6344, 6347-48 ("House Report")).

As its structure reflects, the Program was "intended to be expeditious and fair" and "to compensate persons with recognized vaccine injuries without requiring the difficult individual determinations of causation of injury and without a demonstration that a manufacturer was negligent or that a vaccine was defective." House Report at 12, reprinted in 1986 U.S.C.C.A.N. at 6353; see also id. at 13, reprinted in 1986 U.S.C.C.A.N. at 6354. ("The Committee anticipates that the speed of the compensation program, the low transaction costs of the system, the no-fault nature of the required findings, and the relative certainty and generosity of the system's awards will divert a significant number of potential plaintiffs from litigation."). "Any person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or is disabled, or the legal representative of any person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table" may

file a petition under the Program.  42 U.S.C. § 300aa-11(b)(1)(A); see also id. § 300aa-14 (Vaccine Injury Table).[3]  Causation is "presumed" where "an injury or condition listed in the Vaccine Injury Table begins to manifest itself within the time specified in the Table for the vaccine in question."  Hines v. Sec'y of Health & Human Servs., 940 F.2d 1518, 1524 (Fed. Cir. 1991); see also 42 U.S.C. §§ 300aa-11(c)(1)(C)(i), -13(a)(1)(A)-(B).[4]  The Vaccine Act also requires that the procedures established for resolving claims under the Program be "expeditious[] and informal," including "flexible and informal standards of admissibility of evidence."  42 U.S.C. § 300aa-12(d)(2)(A)-(B).

The Program imposes firm deadlines for both the filing and resolution of petitions, further reducing the likelihood of complex causation inquiries or extended litigation.  A petition for compensation arising out of a vaccination administered before October 1, 1988 (a "pre-Act" petition), must have been filed within 28 months of that date, and, in any event, "no such petition may be filed if the first symptom or manifestation of onset or of the significant aggravation of such injury occurred more than 36 months after the date of administration of the vaccine."  Id. § 300aa-16(a)(1).  A petition for compensation arising out of a vaccination administered after October 1, 1988 (a "post-Act" petition) must be filed within 36 months of the onset of symptoms; "if a death occurred," a petition must be filed within 24 months of the death and no more than 48 months after the onset of symptoms.  Id. § 300aa-16(a)(2)-(3).  In turn, once a petition is received, a

---

[3]     The Act requires that such a petition be filed, and judgment from the Program rejected, prior to bringing an action in state court.  42 U.S.C. §§ 300aa-11(a)(2)(A), -21.

[4]     "[F]or injuries not listed in the Table, or which do not occur within the time period stipulated in the Table, the Vaccine Act authorizes recovery only if the petitioner proves actual causation."  Hines, 940 F.2d at 1524-25; see also 42 U.S.C. § 300aa-11(c)(1)(C)(ii); Althen v. Sec'y of Health & Human Servs., 418 F.3d 1274, 1278 (Fed. Cir. 2005).

special master of the United States Court of Federal Claims must issue a decision within 240 days (with some time excepted), and stays are generally limited.[5]  Id. § 300aa-12.

The types of compensation available to a petitioner under the Program are listed in 42 U.S.C. § 300aa-15.  Section 300aa-15(a) addresses post-Act petitions, such as the petition at issue here; subsection (b) addresses pre-Act petitions.  Subsection (a) provides, in relevant part:

> Compensation awarded under the Program to a petitioner under section 300aa-11 of this title for a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, shall include the following:
>
> (1)     (A) Actual unreimbursable expenses incurred from the date of the judgment awarding such expenses and reasonable projected unreimbursable expenses which . . . result from the vaccine-related injury for which the petitioner seeks compensation . . . .
>
>          (B) Subject to section 300aa-16(a)(2) of this title, actual unreimbursable expenses incurred before the date of the judgment awarding such expenses which . . . resulted from the vaccine-related injury for which the petitioner seeks compensation . . . .[6]
>
> (2)     In the event of a vaccine-related death, an award of $250,000 for the estate of the deceased.
>
> (3)     (A) In the case of any person who has sustained a vaccine-related injury after attaining the age of 18 and whose earning capacity is or

---

[5]     This case, of course, is an exception to this general rule.  As the Special Master recognized, this is a "very unusual Vaccine Act case."  Zatuchni, 2006 WL 1499982, at *3 n.5.  Repeated stays were granted in an effort to answer precisely the kind of complex causation questions the Program is structured to avoid, and thus Snyder's claim was not resolved for more than ten years after it was initially filed -- and several days after she died.  See id. at *3; Snyder, 2005 WL 1230787, at *3-*5.  The "unusual" posture of this case, however, is not relevant to the question presented.

[6]     The types of recoverable "unreimbursable expenses" under these provisions are detailed in 42 U.S.C. §§ 300aa-15(a)(1)(A)(iii)(II) and -15(a)(1)(B)(iii), which are omitted here for the sake of simplicity, as they are not at issue in the instant appeal.

has been impaired by reason of such person's vaccine-related injury for which compensation is to be awarded, compensation for actual and anticipated loss of earnings determined in accordance with generally recognized actuarial principles and projections.

[. . . .]

(4) For actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000.

Id. § 300aa-15(a). Subsection (b) incorporates by reference most of the categories of compensation established in subsection (a), but is structured somewhat differently, does not permit recovery of unreimbursable expenses incurred before the date of judgment, and contains a stricter limit on the amount of compensation that may be awarded for several other categories of compensation. It provides:

Compensation awarded under the Program to a petitioner under section 300aa-11 of this title for a vaccine-related injury or death associated with the administration of a vaccine before October 1, 1988, may include the compensation described in paragraphs (1)(A) and (2) of subsection (a) of this section and may also include an amount, not to exceed a combined total of $30,000, for--

(1) lost earnings (as provided in paragraph (3) of subsection (a) of this section),
(2) pain and suffering (as provided in paragraph (4) of subsection (a) of this section), and
(3) reasonable attorneys' fees and costs (as provided in subsection (e) of this section[)].

Id. § 300aa-15(b). The Act also provides that compensation will be paid in no more than 3,500 pre-Act cases. Id. § 300aa-11(b)(1)(B).

The question presented here is whether a petitioner who has suffered a vaccine-related injury and dies from vaccine-related causes while her petition for compensation under § 300aa-15(a) is pending may recover, in addition to the death benefit provided under § 300aa-15(a)(2), compensation under subsections (a)(1), (3), and (4). Based on

the statutory text and structure outlined above, we answer this question in the affirmative.

Most important, the text and structure of § 300aa-15(a) indicate that the death benefit provided by subsection (a)(2) is not the exclusive remedy where a petitioner has experienced both a vaccine-related injury and a vaccine-related death. First, subsection (a)(2) is not set off from the subsections dealing with compensation for expenses, lost wages, and pain and suffering; to the contrary, it is listed between and alongside those provisions, which supports an interpretation in which the death benefit is simply one of several types of compensation that are available in an appropriate case. Second, and perhaps most crucially, the text of subsection (a) as a whole does not, as the government maintains, provide any indication that the death benefit in (a)(2) is the only compensation that may be paid in a "death case," whereas the compensation provided for in subsections (a)(1), (3), and (4) may be paid only in an "injury case" in which the injured party is still living. Subsection (a) begins with the directive that "[c]ompensation . . . shall include the following," and proceeds to list four categories of available compensation. Id. § 300aa-15(a) (emphasis added). The government argues, however, that despite this inclusive opening language, subsections (a)(1), (3), and (4) state that they provide only compensation for expenses, lost wages, and pain and suffering caused by a "vaccine-related injury," whereas subsection (a)(2) states that it provides $250,000 to an estate only "[i]n the event of a vaccine-related death," and that this phrasing supports the conclusion that compensation under all four of these provisions is not permitted.

This argument does not withstand scrutiny. Put simply, the fact that a vaccine-related death followed a vaccine-related injury in a particular case does not alter the fact that certain expenses were incurred, wages lost, or pain and suffering endured in the interim, and these damages are no less related to or caused by a vaccine-related injury within the meaning of subsections (a)(1), (3), and (4) simply because the vaccine-injured person in question is no longer living. Id. § 300-15(a). Thus, it is in no way inconsistent with the text of 42 U.S.C. § 300aa-15(a) to award compensation under subsections (a)(1), (3), and (4) for damages that "resulted from" or were sustained "by reason of" a vaccine-related injury in addition to the death benefit provided for under subsection (a)(2) "[i]n the event of a vaccine-related death." Id.[7] To the contrary, this is the reading of § 300aa-15(a) that most naturally flows from its text and structure.

This interpretation of § 300aa-15(a) is confirmed by an analysis of § 300aa-15(b). The government conceded in oral argument that these two provisions, while differently structured and addressed to different categories of petitions (pre-Act rather than post-Act petitions), should be interpreted consistently with respect to the question of whether compensation for a vaccine-related injury can be awarded after the death of a vaccine-injured person, as neither the statute itself nor the legislative history provides any indication that Congress intended to reach a different result on this point in pre-Act and

---

[7] The government also argues that Congress's intent to limit compensation "[i]n the event of a vaccine-related death" to the death benefit provided in subsection (a)(2) is evidenced by the fact that this subsection is the only one that makes reference to a payment made to an "estate." We do not view this language in the same light. Read in context, this language seems to establish only that, where a vaccine-related death has occurred, the $250,000 should be paid directly to the deceased individual's estate, and not to some other entity or person, such as a surviving spouse. Similarly, while subsections (a)(1), (3), and (4) do not state that an estate may receive the compensation described therein, neither do they state that only a living vaccine-injured person may do so.

post-Act cases.[8]  We agree, and further find that the text and structure of subsection (b) make even more explicit that both "injury" and "death" compensation may be available in an appropriate case.

Section 300aa-15(b) provides that, in a pre-Act case, compensation "may include the compensation described in paragraphs (1)(A) <u>and</u> (2) of subsection (a) of this

---

[8]     In fact, the amendment history of subsection (b) confirms that subsections (a) and (b), as currently written, should be read as providing the same types of compensation in appropriate cases (with one exception).  As passed, 42 U.S.C. § 300aa-15(b) restricted recovery in pre-Act cases to "the compensation described in paragraphs (1)(A) and (2) of subsection (a)" -- <u>i.e.</u>, to post-judgment expenses and the death benefit.  Pub L. No. 99-660, § 2115(b).  In 1987, subsection (b) was amended to expand the categories of compensation available.  Rather than simply state which of the types of compensation described in subsection (a) are available in a pre-Act case, this revision instead incorporated subsection (a) by (indirect) reference by providing that compensation in a pre-Act case

> may not include the compensation described in paragraph (1)(B) of subsection (a) [<u>i.e.</u>, pre-judgment expenses] and may include attorney's fees and other costs included in a judgment under subsection (e) [<u>i.e.</u>, costs and fees], except that the total amount that may be paid as compensation under paragraphs (3) and (4) of subsection (a) [<u>i.e.</u>, lost wages and pain and suffering] and included as attorneys' fees and other costs under subsection (3) may not exceed $30,000.

Pub L. No. 100-203, § 4303(e).  In essence, subsection (b) was amended to mirror subsection (a) in terms of the types of compensation available, with the exception of the denial of pre-judgment expenses; compensation under all other provisions of subsection (a) was thus made available in a pre-Act case, but compensation for lost wages, pain and suffering, and costs and fees was capped at $30,000.  In 1989, subsection (b) was amended again to read as it does today.  The legislative history indicates that this last amendment, however, was "only intended to clarify the amount of damages" available in light of "some confusion about the allowable compensation," and "represents no change in policy from the Act" as previously written.  H.R. Rep. 101-247, at 514, <u>reprinted in</u> 1989 U.S.C.C.A.N. 1906, 2240.  As this legislative history indicates, the current version of subsection (b) is intended to make the connection between the types of compensation available under subsections (a) and (b) even more explicit than was the case in 1987.  In sum, then, because both the text of subsection (b) and the associated legislative history indicate that subsection (b) is intended to be -- with some limited and explicit exceptions -- a reflection of subsection (a), subsection (b) is properly read as a guide to the types of compensation available under subsection (a) in this case.

section <u>and may also include</u> . . . lost earnings [and] pain and suffering" as described in subsections (a)(3) and (4). <u>Id.</u> § 300aa-15(b) (emphasis added). Although recovery for lost earnings and pain and suffering (along with attorney's fees) are capped at $30,000 for a pre-Act recovery under subsection (b), the underscored text establishes beyond cavil that, in a pre-Act case, the statute provides that the death benefit in paragraph (2) may be paid to an estate alongside compensation for post-judgment expenses, lost earnings, and pain and suffering. If we are to read subsections (a) and (b) in parallel, then, the interpretation of subsection (a) outlined above must be adopted here.[9] Moreover, as the government's concession underscores, nothing in the language or structure of the Vaccine Act indicates that Congress intended to provide vaccine-related injury compensation in addition to the death benefit in pre-Act cases but not in post-Act cases.

Moving beyond § 300aa-15 itself, the government argues that several other provisions of the statute demonstrate that the Vaccine Act as a whole draws a distinction between vaccine-related injury claims and vaccine-related death claims that precludes a finding that any petitioner might be awarded the compensation contemplated here. Primary reliance is placed on § 300aa-11(b)(1)(A), which describes who "may . . . file a petition for compensation under the Program," and § 300aa-11(b)(2), which provides that "[o]nly one petition may be filed with respect to each

---

[9]     This reading of subsection (b) also disposes of the government's contention that the use of the conjunction "or" in the first sentence of subsection (a), which notes that compensation will be paid "for a vaccine-related injury or death," is intended to indicate that "injury" compensation <u>or</u> "death" benefits, but not both, may be paid in a particular case. As subsection (b) demonstrates, this language simply describes the two broad categories of compensation available, which are then further detailed in the subsections that follow, and in no way indicates that an award of one category of compensation precludes an award of the other.

administration of a vaccine" (the "single petition rule"). While we are mindful that "[s]tatutes must be read as a whole," United States v. Atlantic Research Corp., -- U.S. -- , 127 S. Ct. 2331, 2336 (2007) (internal quotation marks omitted), we do not find the government's arguments on these points to be compelling.

Based on its reading of § 300aa-11(b)(1)(A), the government contends that because the right to file a claim after the death of a vaccine-injured person is limited to the "the legal representative of any person who died as the result of the administration of a vaccine," it is apparent that "a person who dies before the filing of a petition cannot request compensation for a vaccine-related injury." Reasoning from this conclusion, the government argues that vaccine-related injury claims thus do not survive the death of the vaccine-injured person. The government's reading of this provision goes too far. We need not decide whether § 300aa-11(b)(1)(A) would permit the estate of a person who suffered vaccine-related injuries but died of a non-vaccine-related cause to file a petition for vaccine-related injury compensation, and thus express no view on that point;[10] this provision, however, plainly does not dictate that a properly filed petition by

---

[10]  The dissent states that our demurer here indicates that we are "troubled by the possibility of this anomalous result." Dissent at 6 n.5. To the contrary, we are simply declining to decide a question not presented in the case before us. Moreover, we do not find "troubling" or "anomalous" the possibility that § 300aa-11(b)(1)(A) would bar the estate of a person who died of non-vaccine-related causes from filing a petition for vaccine-related injury compensation. As noted below, infra at 16-17, § 300aa-11(b)(1)(A) is simply one of several trade-offs and limitations in the Program, and we express no view on the policy choices reflected in those provisions. By contrast, it may be noted that the federal common law approach offered by the dissent appears to conflict directly with § 300aa-11(b)(1)(A). The dissent's approach would allow a vaccine-related injury claim to survive in all cases -- regardless of the cause of death or whether a petition was filed before or after death -- and thus would permit a new petition for vaccine-related injury compensation to be filed by the estate of a person who did not die from a vaccine-related cause.

the estate of a person who suffered both vaccine-related injuries and a vaccine-related death (and thus had standing to file under § 300aa-11(b)(1)(A)) may not contain a request for any and all of the types of compensation listed in § 300aa-15(a). Similarly, as in this case, if a petition is properly filed by a person who suffered a vaccine-related injury, but that person dies of vaccine-related causes while her claim is pending, § 300aa-11(b)(1)(A) does not prevent -- directly or by implication -- the legal representative of the estate of such a person from requesting each of the categories of compensation listed in § 300aa-15(a) after they have been properly substituted for the deceased petitioner.

In a related argument, the government contends that the single petition rule of § 300aa-11(b)(2) also supports its view that the Vaccine Act makes a bright-line distinction between "injury" cases and "death" cases. The government argues that, as a

---

The dissent appears willing to endorse such a result in order to "harmonize the federal scheme with the state alternative" in light of what the dissent perceives as Congress's intent to "replace" state law remedies with the compensation scheme provided by the Program. Dissent at 13. The dissent reasons that "[a] rule in favor of survivorship of vaccine-related injury claims would preserve the Vaccine Act as an effective substitute for the state tort system." Id. This reflects a misreading of the Act. Not only, as the dissent recognizes, are claimants permitted to opt-out of or withdraw from the Program under several circumstances in order to seek remedies in state court, see 42 U.S.C. §§ 300aa-11(a)(2)(A), 21(a)-(b), but the Act also explicitly preempts state laws that "prohibit[] an individual from bringing a civil action against a vaccine manufacturer for damages for a vaccine-related injury or death if such civil action is not barred" under the Program. Id. § 300aa-22(e). In short, the Act does not "replace" or provide a "substitute for" state law remedies; rather, it provides an alternative forum of first resort designed to "divert a significant number of potential plaintiffs from litigation." House Report at 13, reprinted in 1986 U.S.C.C.A.N. at 6354. Where compensation is not available under the Program, or is seen by the claimant as unsatisfactory for any reason, however, the Act expressly contemplates that claimants will seek state-law remedies. Thus, faced with a scenario in which compensation is not available under the Program, the appropriate response is not to expand the scope of the Act in order to "harmonize" the Act with state law, but rather to follow the unambiguous language of the Act and allow the claimant to proceed to state court.

result of this rule, if a vaccine-injured person were to file a petition and receive compensation under § 300aa-15(a)(1), (3), and (4) during his lifetime, and were subsequently to die as a result of his vaccine-related injuries, a second petition and recovery under § 300aa-15(a)(2) would not be permitted.  Because it would not be possible to recover both the death benefit and vaccine-related injury compensation under those circumstances, the government contends that the statutory structure contemplates that there are "two separate types of petitions -- a vaccine injury petition or a vaccine-related death petition" and that the "pursuit of the two separate claims in a single petition" is "precluded."

We, of course, agree that a second petition seeking the death benefit would not be permitted under the circumstances just described; that result is clearly dictated by the single-petition rule in § 300aa-11(b)(2).  It does not follow, however, that because recovery of both the death benefit and vaccine-related injury compensation is not possible in one scenario that it is not possible under another quite different scenario, such as that presented by the instant appeal.  As the description above indicates, the Program contains several limitations and trade-offs that restrict recovery, including the statute of limitations, the filing requirements of § 300aa-11, the single petition rule, the limitation on the number of pre-Act petitions for which compensation may be awarded, and limits on the amount of compensation that may be paid under certain subsections of § 300aa-15.  Many of these limitations appear to be driven by concerns about the difficultly of establishing causation for injuries or deaths after a significant lapse of time, or about the adequacy of the Vaccine Injury Compensation Trust Fund, see 26 U.S.C. § 9510, to cover all petitions that might be filed under the Program.  Whatever their

origin, that these limitations prevent certain individuals who have undoubtedly suffered as a result of a vaccine from receiving full (or any) compensation is beyond question. Given, however, what we view as the plain meaning of § 300aa-15 -- that recovery under § 300aa-15(a)(1) through (4) is permitted where appropriate -- we do not believe that these limiting provisions require us to set aside that meaning here and hold that such a recovery is never possible simply because these limiting provisions indicate that it would be unattainable under certain circumstances, nor do we feel that such a result is either "absurd" or inconsistent with the text, structure, or spirit of the Vaccine Act as a whole.[11]

Moreover, we note that if the government's arguments are taken to their logical conclusion, all recovery would be denied here. The government contends that §§ 300aa-11(b)(1)(A) and 300aa-11(b)(2), read together, indicate that a petition may be filed for either a vaccine-related injury or a vaccine-related death, but not for both, and that the compensation available is determined by the identity of the filer: if an estate files, it may only receive a death benefit; if an injured person files, she may only receive

---

[11] The government further contends that the statute of limitations provided in § 300aa-16(a)(2) and (3), which distinguishes between petitions arising out of "a vaccine-related injury" and cases in which "a death occurred as a result of the administration of [a] vaccine," also supports its view that the Program generally distinguishes between "injury" cases and "death" cases. 42 U.S.C. § 300aa-16(a)(2)-(3). First, we note, again, that these provisions are in no way inconsistent with a system in which petitions for both vaccine-related injury compensation and a death benefit are permitted. (Such a petition would simply fall into the category of cases in which "a death occurred as a result of the administration of [a] vaccine.") Second, the legislative history indicates that the statute of limitations -- including the distinction drawn between "vaccine-related injury" cases and cases in which "a death occurred" -- is more readily explained by a concern with avoiding "difficult individual determinations of causation" in connection with Program petitions, and thus does not necessarily reflect a broader goal of separating "injury" cases and "death" cases. House Report at 12, reprinted in 1986 U.S.C.C.A.N. at 6353; see also id. at 13, reprinted in 1986 U.S.C.C.A.N. at 6354.

injury-related benefits. In this case, however, Snyder filed her claim for vaccine-related injury compensation while she was alive, and the single-petition rule bars the filing of any additional petitions related to the administration of her MMR vaccine. In this scenario, the most logical outcome under the government's reading of the statute would be to conclude (1) that because Snyder's estate did not "file" the claim at issue here within the meaning of § 300aa-11(b)(1)(A) -- but rather has been substituted for the deceased Snyder in order to continue her original petition -- it cannot recover anything in connection with her petition; (2) that this petition should therefore be denied; and (3) that because no further petitions may be filed, no recovery is available to the estate. We recognize, of course, that the government has chosen to concede in this appeal that Snyder's estate is entitled to recover a death benefit, but the result that would follow from an endorsement of the logic of the government's position -- a result that we do not believe is required under the statute -- underscores the imprudence of reading § 300aa-11(b) as controlling the types of compensation available rather than, as its text provides, simply describing who "may . . . file a petition for compensation under the Program." 42 U.S.C. § 300aa-11(b)(1)(A).

Given the posture of this case, we also note that there is no procedural difficulty presented by the substitution of a deceased petitioner's legal representative following a vaccine-related death that prevents us from reaching the result contemplated here. RCFC 25(a)(1) provides that "[i]f a party dies and the claim is not thereby extinguished, the court may order substitution of the proper parties." The Rule also details the procedural requirements for effecting the substitution. RCFC 25. In this case, substitution was made pursuant to this procedure, and while the government contested

whether the petitioner's motion for substitution was timely in light of certain delays in the probate process, this procedural question was resolved in favor of the petitioner and is not challenged here. Snyder v. Sec'y of Health & Human Servs., 69 Fed. Cl. 390 (2006).[12]

Finally, we do not find that the doctrine of sovereign immunity prevents us from affirming here. As the discussion above indicates, we do not find that the government has offered a "plausible" reading of the statute, Marathon Oil Co. v. United States, 374 F.3d 1123, 1127 (Fed. Cir. 2004), as endorsement of its position would require us to ignore what we see as the plain reading of 42 U.S.C. § 300aa-15(a) and (b), and to do so in the absence of any statutory guidance supporting that reinterpretation. The doctrine of sovereign immunity does not require such a result.[13]

---

[12]     We recognize that RCFC 25 is purely a procedural device, and does not answer the substantive legal question of whether a claim is "extinguished" under these circumstances. Cf. Robertson v. Wegmann, 436 U.S. 584, 587 n.3 (1978). That question of substantive law is answered in the analysis provided above.

[13]     The government cites, for example, Schumacher v. Secretary of Health & Human Services, 2 F.3d 1128 (Fed. Cir. 1993), in support of the proposition that the sovereign immunity doctrine applies to interpretations of the Vaccine Act. In that case, however, while we recognized that "a waiver of sovereign immunity must be unequivocally expressed," id. at 1135 n.12 (internal quotation marks omitted), we rejected the government's interpretation of 42 U.S.C. § 300aa-11(a)(5)(B) as inconsistent with the text, structure, and purpose of the Vaccine Act. Id. at 1130-35. We reach a similar conclusion here. Moreover, while the government has asserted, citing, inter alia, United States v. Williams, 514 U.S. 527, 541 (1995) (Scalia, J., concurring), that the sovereign immunity doctrine "applies even to the determination of the scope of explicit waivers," id., the sentences that follow the quoted language are equally instructive: "The rule does not, however, require explicit waivers to be given a meaning that is implausible . . . . '"The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced."'" Id. (quoting United States v. Aetna Cas. & Surety Co., 338 U.S. 366, 383 (1949) (quoting Anderson v. Hayes Constr. Co, 153 N.E. 28, 29-30 (N.Y. 1926) (Cardozo, J.))).

CONCLUSION

The judgment of the Court of Federal Claims awarding the petitioner

compensation pursuant to 42 U.S.C. § 300aa-15(a) in the amount of $804,323.90 is

affirmed.

<u>AFFIRMED</u>

COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

2007-5034

DORY ZATUCHNI,
Executrix of the Estate of
E. BARBARA SNYDER, deceased,

Petitioner-Appellee,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent-Appellant.

Appeal from the United States Court of Federal Claims in 94-VV-58, Judge Thomas C. Wheeler.

DYK, Circuit Judge, concurring in the result and dissenting from the majority opinion.

This case presents a simple question: whether a claim for compensation for a vaccine-related injury under the National Childhood Vaccine Injury Act (the "Vaccine Act"), 42 U.S.C. §§ 300aa-10, to -34 (2000), survives the death of a petitioner. Without any basis in the statutory text, the majority holds that the Vaccine Act provides for survivorship. In my view, the Vaccine Act is entirely silent as to issues of survivorship. The majority's approach is contrary to established authority recognized explicitly in eight circuits, and implicitly by the Supreme Court, that survivorship is determined as a matter of federal common law when the statute does not explicitly address the question. The majority offers no reason for ignoring this established rule in favor of an untenable construction of the Vaccine Act.

I

This issue arises against a background of pervasive concern about the survival of personal injury claims. At common law, personal injury claims, unlike claims for injury to property, did not survive, but abated upon the death of either the plaintiff or the defendant. See, e.g., Restatement (Second) of Torts § 900(a) & cmt. a. (1979); see also Wex S. Malone, The Genesis of Wrongful Death, 17 Stan. L. Rev. 1043, 1044 (1965). The modern approach, however, has been to reject the common law rule and allow survivorship. See W. Page Keeton et al., Prosser and Keeton on The Law of Torts § 126 (4th ed. 1984).

The majority goes to great lengths to demonstrate that the Vaccine Act does not preclude survivorship, and I agree.[1] However, in my view, the majority entirely fails to explain where or how the Vaccine Act affirmatively provides for survivorship. It is well established that in construing a statute, a court may not "draw on some unexpressed spirit outside the bounds of the normal meaning of" the words used in the statute. Addison v. Holly Hill Fruit Prods., 322 U.S. 607, 617 (1944); see also Ernst & Ernst v. Hochfelder, 425 U.S. 185, 199 (1976) (rejecting construction of statute that "would add a gloss to the operative language of the statute quite different from its commonly accepted meaning").[2] The majority opinion does not identify any statutory text that could be read to provide a right of survivorship.

---

[1] Unlike the Vaccine Act, some statutes do expressly preclude survivorship, eliminating the need to turn to federal common law to resolve the issue. See, e.g., 38 U.S.C. § 1151; see also Seymour v. Principi, 245 F.3d 1377, 1380 (Fed. Cir. 2001) ("[I]t follows directly from the language of section 1151 that a claim for disability under section 1151 is extinguished by a veteran's death.").

[2] The Supreme Court expressed this principle at greater length in Addison:

2007-5034                                      2

The only statutory text that could possibly be read to provide for survivorship of some Vaccine Act claims is the act's standing provision:

> [A]ny person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or is disabled, or the legal representative of any person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table may, if the person meets the requirements of subsection (c)(1) of this section, file a petition for compensation under the [National Vaccine Injury Compensation] Program.

42 U.S.C. § 300aa-11(b)(1)(A). Any construction of section 300aa-11(b)(1)(A) to provide affirmatively for survivorship of injury claims, however, would be plainly incorrect.

First, the text of section 300aa-11(b)(1)(A) simply does not address whether a claim for a vaccine related injury survives and can be pursued by the estate of the injured person. The standing language provides that the legal representative of a person "who has sustained a vaccine-related injury" may file a petition for compensation only if the injured person "is a minor or is disabled." This language does not address whether a legal representative of a deceased, previously-injured person may file a petition for compensation. The standing provision also authorizes "the legal representative of any person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table" to bring "a petition for compensation." This

---

We should of course be faithful to the meaning of a statute. But after all Congress expresses its meaning by words. If legislative policy is couched in vague language, easily susceptible of one meaning as well as another in the common speech of men, we should not stifle a policy by a pedantic or grudging process of construction. To let general words draw nourishment from their purpose is one thing. To draw on some unexpressed spirit outside the bounds of the normal meaning of words is quite another.

322 U.S. at 617.

2007-5034                                        3

provision of section 300aa-11(b)(1)(A) clearly refers to a claim for the death benefit provided in section 300aa-15(a)(2) and does not authorize any action with respect to a person who has suffered a vaccine-related <u>injury</u> before death. In addition, there is not a shred of legislative history that would support a construction of section 300aa-11(b)(1)(A) as explicitly providing for survivorship of vaccine-related injury claims, nor does the majority claim that any exists.

Second, it is significant that section 300aa-11 does not use language similar to that used in other federal or state statutes that do provide for survivorship. Those statutes use terminology such as "not abate" or "survive" to preserve causes of action after death. For example, Congress has explicitly provided that any "civil action for damages commenced by or on behalf of the United States or in which it is interested <u>shall not abate</u> on the death of a defendant but <u>shall survive and be enforceable</u> against his estate as well as against surviving defendants." 28 U.S.C. § 2404 (emphases added). Similarly, the Federal Employers' Liability Act, in providing for survivorship, states:

> Any right of action given by this chapter to a person suffering injury <u>shall survive to his or her personal representative</u>, for the benefit of the surviving widow or husband and children of such employee, and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, but in such cases there shall be only one recovery for the same injury.

45 U.S.C. § 59 (emphasis added).[3] The vast majority of state statutes also utilize such language. <u>See</u> 3 Stuart M. Speiser & James E. Rooks, Jr., <u>Recovery for Wrongful</u>

---

[3] This explicit survivorship provision is also incorporated by reference in the Jones Act. <u>See</u> 46 U.S.C.A § 30104(a) (West 2006); <u>see also</u> <u>Gillespie v. U.S. Steel Corp.</u>, 379 U.S. 148, 157 (1964) ("There is, of course, no doubt that the Jones Act

2007-5034                          4

<u>Death</u>, app. A (4th ed. 2005) (collecting state statutes).  The Vaccine Act contains no similar language addressing the issue of survivorship.

Third, and perhaps most significantly, a strained interpretation of section 300aa-11(b)(1)(A) to provide for survivorship would create an anomalous, arbitrary, and unfair result that Congress cannot have intended.  The language of the Vaccine Act authorizes an action only by "the legal representative of any person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table."  42 U.S.C. § 300aa-11(b)(1)(A).

As the government points out, if this language were construed to provide for survival, a petitioner's claim for vaccine-related injury would survive <u>only</u> if the petitioner died from vaccine-related causes, since the language refers only to "the legal representative of any person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table."  <u>Id.</u>  If the petitioner died of unrelated causes, section 300aa-11(b)(1)(A) could not be read to provide any standing for the petitioner's personal representative, and the vaccine-related injury claim would apparently abate.  This would leave such a petitioner's estate no basis for any compensation at all, even though the petitioner would have suffered vaccine-related injuries and associated costs during his or her life.  There is no basis in the policy of the Vaccine Act to distinguish, in terms of the availability of compensation for pre-death injury, between a person who suffers a vaccine-related injury and subsequently dies as a result of the vaccination, and

---

through § 9 of the FELA, 45 U.S.C. § 59 (1958 ed.), provides for survival after the death of the seaman of '(a)ny right of action given by this chapter[]'. . . ."  (footnote omitted)).

a person who suffers the same vaccine-related injury but dies of unrelated causes.[4]

Congress cannot possibly have intended such a result, and nothing in the legislative history suggests that Congress intended this result. It would be a further stretch to imagine that Congress not only intended such a distinction, but chose to embody it in statutory language that purports only to confer standing on a legal representative to seek the statutory death benefit.[5]

Perhaps recognizing that section 300aa-11(b)(1)(A) cannot be read as providing for survivorship, the majority appears to base its finding of survivorship on a negative inference from another provision of the Vaccine Act, section 300aa-15(b), which governs compensation available for so-called pre-Act injuries, that is, those arising from vaccinations administered prior to the 1988 effective date of the Vaccine Act.[6] Maj. Op.

---

[4] While not necessary to its result, the majority suggests that if a petitioner secured a judgment for a vaccine-related injury, and subsequently died as a result of the same vaccination, that person's legal representative might not be able to recover the statutory death benefit because of section 300aa-11(b)(2), which provides that "[o]nly one petition may be filed with respect to each administration of a vaccine." See Maj. Op. at 16. This is clearly not the purpose of the single petition rule, which was intended to prevent a petitioner from evading the limitation on compensation for pain and suffering by filing multiple petitions for the same vaccine-related injury. See H.R. Rep. No. 99-908, at 14-15 (1986), reprinted in 1986 U.S.C.C.A.N. 6344, 6355-56.

[5] The majority appears to be troubled by the possibility of this anomalous result. It does not rely on section 300aa-11(b)(1)(A) as the source of the survivorship right for vaccine-related injury claims, and it explicitly avoids deciding whether a claim for vaccine-related injury would survive the injured person's unrelated death. "We need not decide whether § 300aa-11(b)(1)(A) would permit the estate of a person who suffered vaccine-related injuries but died of a non-vaccine-related cause to file a petition for vaccine-related injury compensation . . . ." Maj. Op. at 14.

[6] Section 300aa-15(b) provides, in relevant part:
Compensation awarded under the Program to a petitioner under section 300aa-11 of this title for a vaccine-related injury or death associated with the administration of a vaccine before October 1, 1988, may include the compensation described in paragraphs (1)(A) [providing for unreimbursed medical expenses for vaccine injuries] and (2) [providing a uniform death

at 11-13. However, the majority plainly misreads this section as providing for survivorship. Like section 300aa-11(b)(1)(A), section 300aa-15(b) does not address the issue of survivorship, and it does not use the language "survive" or "not abate."

The plain language of section 300aa-15(b) limits the compensation available with respect to vaccinations administered prior to the effective date of the Vaccine Act by imposing a $30,000 cap on the total compensation for pain and suffering, lost wages, and attorneys' fees, while otherwise making available in pre-Vaccine Act cases all of the same categories of compensation available in post-Vaccine Act cases under section 300aa-15(a): medical expenses, lost wages, pain and suffering, and the statutory death benefit (in addition to reasonable attorneys' fees, as provided in section 300aa-15(e)). The majority relies heavily on the use of the word "and" in section 300aa-15(b) (referring to injury compensation "and" the death benefit) to reach the conclusion that the same individual may recover both compensation for injury and a death benefit. It then appears to read the same conjunctive language into section 300aa-15(a). Maj. Op. at 12-13. But section 300aa-15(b), in describing the types of compensation recoverable, like section 300aa-15(a), obviously refers to the various types of compensation recoverable by the <u>class</u> of individuals entitled to sue, not the compensation recoverable by each <u>individual</u> claimant. This is necessarily the case because individuals still alive cannot be entitled to the death benefit under section 300aa-15(a)(2). Moreover, the

---

benefit] of subsection (a) of this section and may also include an amount, not to exceed a combined total of $30,000, for--
      (1) lost earnings (as provided in paragraph (3) of subsection (a) of this section),
      (2) pain and suffering (as provided in paragraph (4) of subsection (a) of this section), and

right of any individual claimant to recover is governed explicitly by section 300aa-11, not by section 300aa-15.

This is made clear by section 300aa-15(b) itself. That section refers, with respect to eligibility to receive compensation, back to the standing provision of section 300aa-11, specifying the amount of "[c]ompensation awarded under the Program to a petitioner under section 300aa-11 of this title for a vaccine-related injury or death." 42 U.S.C. § 300aa-15(b). Section 300aa-11 governs the right to recovery of the individual claimant. As discussed above, section 300aa-11 tells us nothing about survivorship.

II

Because nothing in the Vaccine Act addresses the issue of survivorship, the issue is properly addressed as a matter of federal common law. "[T]he inevitable incompleteness presented by all legislation means that" it is the "responsibility of the federal courts . . . 'to declare . . . rules which may be necessary to fill in interstitially or otherwise effectuate the statutory patterns enacted in the large by Congress.'" United States v. Little Lake Misere Land Co., 412 U.S. 580, 593 (1973) (quoting Paul J. Mishkin, The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision, 105 U. Pa. L. Rev., 797, 800 (1957)); see also Montana v. United States, 124 F.3d 1269, 1274 (Fed. Cir. 1997) ("If the [relevant federal] statutes are silent . . . the federal courts must 'fill the interstices of federal legislation according to their own standards.' Therefore, if no federal statute supplies the rule of law, the court must determine whether to create federal common law or to

---

(3) reasonable attorneys' fees and costs (as provided in subsection (e) of this section. [sic]

incorporate state law as the rule of decision." (internal quotation marks and citation omitted) (quoting United States v. Kimbell Foods, Inc., 440 U.S. 715, 727 (1979)).

The issue of survivorship is among the background legal principles for which judicial gap-filling is appropriate. The Supreme Court has impliedly held,[7] and eight circuits have explicitly held,[8] that federal common law determines survivorship where

---

[7] The Supreme Court long ago implicitly recognized this principle. See Ex parte Schreiber, 110 U.S. 76, 80 (1884) (applying, in the face of statutory silence, common law rule that penal actions do not survive the death of a party to conclude that action seeking qui tam penalties for an alleged copyright violation did not survive the defendant's death). The Supreme Court has also used interstitial application of federal common law to allow claims to survive a plaintiff's death. See Carlson v. Green, 446 U.S. 14, 23-25 (1980); Robertson v. Wegmann, 436 U.S. 584 (1978).

[8] See, e.g., United States v. NEC Corp., 11 F.3d 136, 137 (11th Cir. 1993) ("In the absence of an expression of contrary intent, the survival of a federal cause of action is a question of federal common law."); Smith v. Dep't of Human Servs., 876 F.2d 832, 834 (10th Cir. 1989) ("The question of the survival of an action grounded in federal law is governed by federal common law when, as here, there is no expression of contrary intent."); James v. Home Constr. Co. of Mobile, 621 F.2d 727, 729 (5th Cir. 1980) ("[T]he question of survival of a federal cause of action has usually been described as a question of federal common law, in the absence of an expression of contrary intent."); Smith v. No. 2 Galesburg Crown Fin. Corp., 615 F.2d 407, 413 (7th Cir. 1980), overruled on other grounds by Pridegon v. Gates Credit Union, 683 F.2d 182, (7th Cir. 1982); Heikkila v. Barber, 308 F.2d 558, 561 (9th Cir. 1962) ("[when n]o federal statute makes any provision for the survival of claims . . . the question of survival or not must be judged in accordance with the rule at common law."); Pritchard v. Smith, 289 F.2d 153, 155 (8th Cir. 1961) (when a statute "does not deal expressly with the question of survivorship . . . 'it is for the federal courts to fashion the governing rule . . . according to their own standards.'" (quoting Clearfield Trust Co. v. United States, 318 U.S. 363, 367 (1943))); Bowles v. Farmers Nat'l Bank of Lebanon, Ky., 147 F.2d 425, 430 (6th Cir. 1945) (stating that to determine survival of a statutory cause of action "[i]n the absence of an Act of Congress, the federal courts are entitled to apply the proper rules of federal law under their own standards"); Sullivan v. Associated Billposters & Distribs., 6 F.2d 1000, 1004 (2d Cir. 1925) ("A cause of action which is given by a federal statute, if no specific provision is made by act of Congress for its survival, survives or not according to the principles of the common law.").

Courts have also held that the principle that survivorship is determined as a matter of federal common law extends also to claims against the United States. See NEC Corp., 11 F.3d at 137, 139; see also Bilanow v. United States, 309 F.2d 267, 268 (Ct. Cl 1962) (apparently applying common law principles to conclude that action against the United States did not abate upon the plaintiff's death).

the statute is silent as to the issue. Commentators agree. "In some statues creating a federal right of action Congress provides <u>explicitly</u> that the action will survive the death of a party. <u>In the absence of a provision of this kind the court must look to federal common law</u>." 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure</u> § 1954 & n.12 (3d ed. 2007) (footnotes omitted and emphases added)). Ample authority from the Supreme Court and eight circuits supports this well-established proposition.

For example, in <u>United States v. NEC Corp.</u>, 11 F.3d 136 (11th Cir. 1993), the original plaintiff, Williams, had brought a qui tam action against the United States under the False Claims Act, seeking a portion of the recovery the government obtained from the defendant as a result of information he had provided. <u>Id.</u> at 137. The court first determined that "neither the F[alse ]C[laims ]A[ct] nor its legislative history reveals the drafters' intent with respect to survivability. We thus turn to federal common law for guidance." <u>Id.</u> The court held, as a matter of federal common law, that the qui tam claim survived Williams' death. <u>Id.</u> at 139. Likewise, courts have applied a similar analysis to conclude that the survival of actions under other federal statutes, for example, the Age Discrimination in Employment Act and the Truth in Lending Act, is governed by federal common law. <u>See, e.g.</u>, <u>Smith v. Dep't of Human Servs.</u>, 876 F.2d 832, 834 (10th Cir. 1989) (Age Discrimination in Employment Act); <u>Smith v. No. 2 Galesburg Crown Fin. Corp.</u>, 615 F.2d 407, 413 (7th Cir. 1980) (Truth in Lending Act).

Although widely recognizing that federal common law governs, the courts have not clearly articulated the governing rule with respect to survivorship of personal injury claims under the Vaccine Act or more generally. One option would be to adopt the

applicable state law rule.  See, e.g., Robertson v. Wegmann, 436 U.S. 584, 590-91 (1978).  However, that option is not appropriate in this case.  Although not all "[c]ontroversies directly affecting the operations of federal programs . . . require resort to uniform rules," Kimbell Foods, 440 U.S. at 727-28, the creation of a uniform federal rule is particularly appropriate in cases, such as this, that directly concern "the duties of the Federal Government," Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 642 (1981).  In this context, the need for uniformity in the vaccine compensation program is also demonstrated because Congress chose to allow adjudication of claims under the program only in the United States Court of Federal Claims, a single, uniform, national court.  Resort to state law to determine survival of claims under the Vaccine Act would be inappropriate.  See Carlson, 446 U.S. at 23-25 (finding survival of Bivens claims governed by a uniform federal rule in favor of survival rather than state law); Shyface v. Sec'y of Health & Human Servs., 165 F.3d 1344, 1351 (Fed. Cir. 1999) (holding that standard for proof of causation under Vaccine Act must be determined as a uniform federal rule rather than by adopting state law).

Although it is not appropriate to adopt the differing rules of individual states, it is appropriate to follow the approach adopted by the vast majority of states.  Nearly every state now provides for survivorship of personal injury claims by statute, rejecting the common law rule that personal injury claims do not survive death.  See 3 Speiser & Rooks, supra, app. A; see also Keeton et al., supra, § 126 ("[V]irtually every state today has some form of survival statute, the exact provisions of which vary but the gist of which is to permit a personal injury action to continue after the death of either the plaintiff or defendant." (footnote omitted)).

In a closely related context, the Supreme Court has explained that the sweeping rejection by the states of a common law doctrine argues strongly that the common law doctrine should also be rejected as a matter of federal common law. At common law, there was no cause of action for wrongful death. See Moragne v. States Marine Lines, Inc., 398 U.S. 375, 380 (1970). In Moragne, the Supreme Court recognized, as a matter of federal common law, a cause of action for wrongful death in federal admiralty jurisdiction. Id. at 409. The Court held that despite the common law refusal to recognize such a claim, "the work of the legislatures has made the allowance of recovery for wrongful death the general rule of American law, and its denial the exception." Id. at 393. Based in large part on the widespread enactment of state statutes creating a cause of action for wrongful death, creation of a similar federal common law action was appropriate. Id. at 390-92. It is appropriate to follow a similar approach with respect to survivorship of injury claims, since the states by statute have almost uniformly rejected the common law rule that personal injury claims do not survive death. Indeed, it is particularly appropriate to follow the approach of Moragne because the common law doctrines rejecting survivorship and wrongful death actions, while distinct, are related both in historical origin and practical consequence. See Malone, supra, at 1044.

A rule in favor of survival is also consistent with the objectives of the Vaccine Act with respect to both compensation of injured individuals and protection of vaccine manufacturers. The Vaccine Act includes an opt-out provision which requires that individuals harmed by a vaccine submit a claim under the vaccine program, but allows a claimant to reject the program award and instead bring a private action under state law

against a vaccine manufacturer or administrator.[9]  42 U.S.C. § 300aa-11(a)(2)(A).  A rule in favor of survivorship of vaccine-related injury claims would preserve the Vaccine Act as an effective substitute for the state tort system.  As noted earlier, in all or nearly all states, the state tort system that Congress sought to replace with the vaccine compensation program, for claims of vaccine-related injuries and death, provides for survival of personal actions.  A rule in favor of survivorship would harmonize the federal scheme with the state alternative.

I would hold that, because the statutory language does not specify whether claims under the Vaccine Act survive, this issue is properly governed by federal common law, and that claims for vaccine-related injury accruing prior to death survive the death of a claimant.  I respectfully dissent from the majority's refusal to apply well-established law, but concur in the result that allows the estate of this petitioner to recover.[10]

---

[9]    A claimant under the Program may file a written election to waive any award under the Program, and instead file a civil suit for damages, within ninety days after the entry of judgment under the Program and completion of any appeal.  42 U.S.C. § 300aa-21(a).  Alternatively, a claimant may also forego an award under the Program in favor of a civil suit by filing a notice of intent to withdraw a petition under the Program if the petition is not decided within statutory time limitations.  42 U.S.C. §§ 300aa-11(a)(2)(A)(ii), -21(b).

[10]    While the federal common law was not addressed by the parties, both the Supreme Court and this court have held that we must apply the correct law to an issue properly raised even if the parties do not direct us to the correct legal principles.  See Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 99 (1991); Forshey v. Principi, 284 F.3d 1335, 1356 (Fed. Cir. 2002) (en banc).