# United States Court of Appeals for the Federal Circuit

---

**STEPHANIE VINO FIGUEROA, as Personal Representative of the Estate of MANNY FIGUEROA, deceased,**
*Petitioners-Appellants,*

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellee.*

---

2012-5064

---

Appeal from the United States Court of Federal Claims in 10-VV-750, Judge Lynn J. Bush.

---

Decided: May 1, 2013

---

MARTIN E. LEACH, Feiler & Leach, P.L., of Coral Gables, Florida, argued for petitioners-appellants.

MELONIE J. MCCALL, Trial Attorney, Torts Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With her on the brief were STUART F. DELERY, Acting Assistant Attorney General, RUPA BHATTACHARYYA, Director, MARK

W. ROGERS, Deputy Director, and GABRIELLE M. FIELDING, Assistant Director.

_____

Before DYK, PROST, and REYNA, *Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* DYK.

Dissenting opinion filed by *Circuit Judge* PROST.

DYK, Circuit Judge.

Stephanie Vino Figueroa, widow of Manny Figueroa and personal representative of his estate, filed a petition under the Vaccine Act seeking compensation for vaccine-related injuries suffered by Mr. Figueroa. *See* National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, *codified at* 42 U.S.C. §§ 300aa-1 to -34 ("Vaccine Act"). The special master dismissed Ms. Figueroa's petition, reasoning that because Mr. Figueroa had died of pancreatic cancer, a non-vaccine-related cause, Ms. Figueroa lacked standing to file a petition for injury compensation. The Court of Federal Claims affirmed. Ms. Figueroa appeals, arguing that Mr. Figueroa's claim for vaccine-related injury compensation survived his death, and that the Act does not bar his personal representative from pursuing that claim on behalf of his estate. We agree that Mr. Figueroa's injury claim survived his death and that Ms. Figueroa, the personal representative of his estate, has standing to file a petition. We therefore reverse.

BACKGROUND

Mr. Figueroa received the flu vaccine on October 28, 2008. Within twenty days of the vaccination, Mr. Figueroa developed numbness in his face, impaired speech, and weakness. He was hospitalized and diagnosed with Guillain-Barré Syndrome ("GBS"), a debilitating and sometimes fatal nervous system disorder.

Because GBS is not listed on the Vaccine Injury Table, *see* 42 U.S.C. § 300aa-14(a), it is considered an off-Table injury, and requires proof that the vaccine caused the injury. *See generally Althen v. Sec'y of HHS*, 418 F.3d 1274, 1278 (Fed. Cir. 2005). Nonetheless, "many flu [vaccine] causing GBS cases have been compensated under the Program." *Torday v. Sec'y of HHS*, No. 07-372V, 2009 U.S. Claims LEXIS 745, at *10 (Fed. Cl. Sp. Mstr. Dec. 10, 2009) (observing that "there is clearly a medical theory connecting the flu vaccine to GBS"); *see also, e.g.*, *Griglock v. Sec'y of HHS*, 99 Fed. Cl. 373, 374 (2011) (noting that government did not contest that GBS resulted from influenza vaccination), *aff'd*, 687 F.3d 1371 (Fed. Cir. 2012); *Stewart v. Sec'y of HHS*, No. 06–777, 2011 WL 3241585 (Fed. Cl. Sp. Mstr. July 8, 2011) (finding that petitioner successfully showed GBS resulted from influenza vaccine).

Mr. Figueroa had 36 months from the onset of his symptoms to file a petition under the Vaccine Act, that is, until approximately mid-November, 2011. *See* 42 U.S.C. § 300aa-16(a)(2). However, in February of 2010, Mr. Figueroa was diagnosed with pancreatic cancer; he died of pancreatic cancer in April of 2010. His widow, Stephanie Vino Figueroa, was named the personal representative of his estate. On November 1, 2010, Ms. Figueroa filed a petition seeking compensation for the vaccine-related neurological injuries Mr. Figueroa suffered prior to his death. Since the pancreatic cancer which caused Mr. Figueroa's death was not vaccine-related, the petition did not seek a death benefit.

It is not disputed that the estate satisfied the requirements for a timely petition under section 300aa-16(a)(2), because the petition was filed less than thirty-six months after the onset of Mr. Figueroa's GBS. Nor is it disputed that Mr. Figueroa could have filed the petition while alive (or that his representative could have filed it for him, had he been alive but disabled). However, the

Secretary filed a motion to dismiss on the grounds that Ms. Figueroa "is not a proper petitioner under 42 U.S.C. § 300aa-11(b)(1)(A)." *Figueroa ex rel. Figueroa v. Sec'y of HHS*, No. 10-750V, 2011 WL 2784586 at *1 (Fed. Cl. Sp. Mstr. June 22, 2011). The government argued that section 300aa-11(b)(1)(A) provides an exclusive list of individuals who may file a petition, and that the personal representative of an individual who dies of non-vaccine-related causes is not among them.

That section provides:

> any person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or is disabled, *or the legal representative of any person who died as the result of the administration of a vaccine . . .* may, if the person meets the requirements of subsection (c)(1) of this section, file a petition for compensation under the Program.

42 U.S.C. § 300aa-11(b)(1)(A) (emphasis added). The special master agreed, concluding that "even though if Mr. Figueroa had filed his own action when he was alive, his estate may have received some amount of compensation," Ms. Figueroa lacked standing to file a petition on his behalf, because she was not among the individuals listed in section 300aa-11(b)(1)(A). *Figueroa*, 2011 WL 2784586, at *3–4.

Ms. Figueroa sought review of the special master's decision, and the Court of Federal Claims affirmed. *Figueroa v. Sec'y of HHS*, 101 Fed. Cl. 696 (2011). The court acknowledged that the most relevant precedent, *Zatuchni v. Sec'y of HHS*, 516 F.3d 1312 (Fed. Cir. 2008), had "express[ed] no view" on whether a petitioner in Ms. Figueroa's situation would have standing. *Figueroa*, 101 Fed. Cl. at 697 (quoting *Zatuchni*, 516 F.3d at 1321). However, the court reasoned that section 300aa-11(b)(1)(A) permitted only three categories of claimants to

file a petition in the first instance: (1) vaccine-injured persons themselves, (2) the legal representatives of minors or disabled persons, and (3) the legal representatives of the estates of persons who died of vaccine related causes. *Id.* at 697–98. Because Mr. Figueroa had died, the petition did not fall under category (1); because the cancer was fatal, rather than merely disabling him, the petition did not fall under category (2); and because the cancer was not vaccine-related, the petition did not fall under category (3). *Id.* at 698. The court concluded that section 300aa-11(b)(1)(A) did not allow a petition seeking compensation for Mr. Figueroa's vaccine-related injuries to be filed. *Id.*

Ms. Figueroa timely appealed. We have jurisdiction pursuant to 42 U.S.C. § 300aa-12(f). Statutory interpretation is a question of law, and we review the Court of Federal Claims' interpretation of the Vaccine Act de novo. *Whitecotton v. Sec'y of HHS*, 17 F.3d 374, 376 (Fed. Cir. 1994), *rev'd on other grounds*, 514 U.S. 268 (1995).

DISCUSSION

I

This case requires us to address two questions reserved by this court in *Zatuchni*: whether the personal injury claim of a vaccine-injured individual who died from causes unrelated to the vaccine survives his or her death, and whether the personal representative of the estate has standing to file a petition under the Vaccine Act. *See* 516 F.3d at 1320–21.

In 1986, Congress enacted the Vaccine Act to address two primary concerns: first, "that the tort system was failing to adequately compensate persons injured from vaccinations," and second, that there was too much vaccine-related tort litigation. *Cloer v. Sec'y of HHS* (*Cloer I*), 654 F.3d 1322, 1325 (Fed. Cir. 2011) (en banc). Congress recognized that "a small but significant number" of people

"ha[d] been gravely injured" by vaccines, "and they and their families have resorted . . . to the tort system for some form of financial relief." H.R. Rep. No. 99-908, at 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6345. Relief, however, was often unobtainable:

> For the relatively few who are injured by vaccines—through no fault of their own—the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered. . . . [I]n the end, no recovery may be available. Yet futures have been destroyed and mounting expenses must be met.

*Id.* at 6, *reprinted in* 1986 U.S.C.C.A.N. at 6347; *see also Lowry ex rel. Lowry v. Sec'y of HHS*, 189 F.3d 1378, 1381 (Fed. Cir. 1999).

In response, Congress established the National Vaccine Injury Compensation Program, *see* 42 U.S.C. § 300aa-10(a), "a no-fault compensation program 'designed to work faster and with greater ease than the civil tort system,'" *Bruesewitz v. Wyeth LLC*, 562 U.S. ___, ___, 131 S. Ct. 1068, 1073 (2011) (quoting *Whitecotton*, 514 U.S. at 269). The Program provides compensation for vaccine-related injuries, *see* 42 U.S.C. §§ 300aa-15(a)(1), (3),(4), and, "in the event of a vaccine-related death, an award of $250,000 for the estate of the deceased," 42 U.S.C. § 300aa-15(a)(2). "Any person" injured by a vaccine may petition for compensation. 42 U.S.C. § 300aa-11(b)(1)(A).[1]

---

[1]    Both injury claims and death benefit claims are limited to a "vaccine-related injury or death" caused by a vaccine set forth in the Vaccine Injury Table. *See* 42 U.S.C. § 300aa-11 (c)(1)(A); *see also* 42 U.S.C. § 300aa-15(a); 42 U.S.C. § 300aa-33 (defining "vaccine-related

It is not disputed that a claim for injury compensation under the Vaccine Act survives the injured person's death and may be asserted by the personal representative of the estate in most situations, including (1) when the petition is filed *before* death by an injured individual who subsequently dies from non-vaccine-related causes; (2) when the petition is filed *before* death by a vaccine-injured individual who subsequently dies from vaccine-related causes, *see Zatuchni*, 516 F.3d at 1323; and (3) when the petition is filed *after* death by the estate of a vaccine-injured individual who dies of vaccine-related causes, *see Griglock*, 687 F.3d at 1374–75; *Zatuchni*, 516 F.3d at 1321. The only dispute is with respect to the situation here, when the petition is filed *after* the death of a vaccine-injured individual who died of non-vaccine related causes. Treating the petitioner differently in the present situation would be inconsistent with the fundamental objectives of the Act.

As this court, sitting en banc, has recognized, "[r]emedial legislation like the Vaccine Act should be construed in a manner that effectuates its underlying spirit and purpose." *Cloer v. Sec'y of HHS* (*Cloer II*), 675 F.3d 1358, 1362 (Fed. Cir. 2012) (en banc) (citing *Atchison, Topeka, & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 561–62 (1987)); *see also, e.g.*, *Peyton v. Rowe*, 391 U.S. 54, 65 (1968) (citing the "canon of construction that remedial statutes should be liberally construed"). We have also recognized that the Act was meant "[t]o compensate injured persons quickly and fairly," with "'relative certainty and generosity' of compensation." *Cloer I*, 654 F.3d at 1325–26 (quoting H.R. Rep. No. 99-908, at 12–13, *reprinted in* 1986 U.S.C.C.A.N. at 6353–54).

---

injury or death"); 42 C.F.R. § 100.3 (Vaccine Injury Table, including, inter alia, the influenza vaccine).

In particular, as explained in our en banc decision in *Cloer I*, the Vaccine Act enshrines a principle of equal treatment for similarly situated vaccine-injured persons. *See id.* at 1340 (holding that the inequitable results following from a discovery rule precluded the application of such a rule to claims under the Act). It follows that similarly situated individuals "who receive the same vaccine on the same day, and who experience the same medically-recognized symptom of a vaccine-related injury shortly afterwards," *id.*, and who then suffer similar harm as a result, should be treated equally for purposes of standing to seek compensation.

The government's reading of the Act would instead treat similarly situated parties quite differently, based on the unforeseeable "personal circumstances" of an independent illness or injury. *Id.* If two individuals received the same vaccine on the same day, experienced the same nonfatal complications, and sought identical compensation, but died of accidents within days of one another—one the day before filing a petition, and the other the day after—the estate of the person who had not yet filed could recover nothing, while the other estate would receive the maximum injury benefit allowable under the Act. This makes no sense. Moreover, if *neither* party filed a petition before dying, but the first died of an accident and the second died some time later of vaccine-related complications, the first person's estate would recover nothing, while the second person's estate would recover injury compensation and death benefits. Again, this makes no sense. It is illogical to attribute to Congress a purpose to deny some claimants compensation while allowing compensation for others who suffer identical vaccine-related injuries. At oral argument, the government could offer no rational reason why Congress would have chosen to distinguish between injury claims filed before and after death, or between the claims of those who died of a vaccine-related cause and those who did not. "The fact that a

vaccine-related death followed a vaccine-related injury in a particular case does not alter the fact that certain expenses were incurred, wages lost, or pain and suffering endured in the interim." *Zatuchni*, 516 F.3d at 1318.

## II

The government contends, however, that despite the policies of the Act, its language compels a different result, arguing that the "plain language of the Act does not provide for the personal representative of the estate of an individual who died from a non-vaccine-related cause to file a claim for injury compensation." U.S. Br. 6.

"Statutory construction . . . is a holistic endeavor." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 370, 371 (1988). We must consider the language of section 300aa-11(b)(1)(A) in light of "the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). The ultimate question here is whether the estate of an individual who is injured by a vaccine, and thus qualified to recover compensation under the Vaccine Act, may file a petition after the individual dies from a cause unrelated to the vaccine. This requires the resolution of two underlying issues: (1) whether the injured individual's cause of action survives his or her death, and (2) whether the personal representative of the injured individual's estate may file a petition on that cause of action.

## A

The language of the Act does not speak to the first question, but it is well-established that the background rule is that remedial claims survive the death of the injured party. Our law recognizes that "'[t]he basic federal rule is that an action for a penalty does not survive, though *remedial actions do*.'" *Phillips v. Shinseki*, 581 F.3d 1358, 1367 (Fed. Cir. 2009) (emphasis added) (quot-

ing *Faircloth v. Finesod*, 938 F.2d 513, 518 (4th Cir. 1991)); *see also Ex parte Schreiber*, 110 U.S. 76, 80 (1884). As discussed below, our sister circuits have likewise reached the conclusion that claims under remedial federal statutes survive, even in the absence of an express statutory provision. *See generally* 6 *Moore's Federal Practice* § 25.11[3] (3d ed. 2012) ("Generally, under the federal common law, a federal claim survives the death of the party if the claim is remedial and not penal in nature."). A petition for compensation under the Vaccine Act is clearly remedial. *See Cloer II*, 675 F.3d at 1362. Thus, the presumption is that it survives, in the absence of a statutory provision to the contrary.

The dissent's rather startling response to this line of cases is that they were wrong to rely on this presumption of survivorship, because a Supreme Court case from the turn of the century, *Michigan Central Railroad Co. v. Vreeland*, 227 U.S. 59 (1913), rejected such a presumption in the context of the Federal Employers' Liability Act of 1908 ("FELA"). However, our decision in *Phillips* and the decisions of other circuits that have found survivorship under federal statutes are fully consistent with Supreme Court precedent.

Under the old common law principles prevailing at the time of *Michigan Central*, personal injury actions abated upon the death of either the injured party or the tortfeasor. *See generally* Wex S. Malone, *The Genesis of Wrongful Death*, 17 Stan. L. Rev. 1043, 1044–47 (1965). In light of those common law principles, the Supreme Court held in *Michigan Central* that an injury action under a federal statute did not survive unless the statute expressly provided for survival. *Mich. Cent.*, 227 U.S. at 67–68 (holding that FELA actions did not survive an injured employee's death); *see also St. Louis, Iron Mountain & S. Ry. Co. v. Craft*, 237 U.S. 648 (1915) (describing the 1910 amendment which overruled the result in *Michigan Central*). But during the last century, as states

enacted legislation providing for survival, the common law rule changed. "[V]irtually every state today . . . has some form of survival statute, the exact provisions of which vary but the gist of which is to permit a personal injury action to continue after the death of either the plaintiff or defendant." W. Page Keeton et al., *Prosser & Keeton on Torts* § 126, at 942 (5th ed. 1984) ("*Prosser & Keeton*"). Thus, "the principle of the survival of causes of action . . . rather than being exceptional, has now become the rule in almost every common-law jurisdiction." *Cox v. Roth*, 348 U.S. 207, 210 (1955). "[W]here a common-law principle is well established . . . courts may take it as given that Congress has legislated with an expectation that the principle will apply except when a statutory purpose to the contrary is evident." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) (quotation marks omitted). The legislation here—the Vaccine Act—was enacted in 1986, against this changed legal background.

In more recent opinions, the Supreme Court has recognized that in light of these changed background principles, remedial claims survive.[2] *Cox v. Roth* is nearly on

---

[2]   The dissent cites four cases to illustrate that the Supreme Court has "directly applied" the rule of *Michigan Central* many times, but the cited cases did not involve the survival of claims under federal statutes. For example, in *Florida ex rel Vars v. Knott*, 308 U.S. 506 (1939), appellant Vars was denied an insurance agent's license by a Florida official acting under color of Florida law. *See State ex rel Vars v. Knott*, 184 So. 752, 753 (Fla. 1938). Both parties agreed that Vars' constitutional challenge to the Florida law abated with Vars' death. 308 U.S. at 506. *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990), also cited by the dissent, is also irrelevant. To the extent it addressed survivorship, it specifically "decline[d] to address" whether, in light of the widespread adoption of state

point. While *Cox* considered the survival of claims after
the death of the tortfeasor, its reasoning is equally appli-
cable to the death of the injured party. In construing the
Jones Act and FELA, which "contained no clause specifi-
cally providing for the survival of actions against de-
ceased tortfeasors," the Court recognized the new, more
liberal state approach: "advancing civilization and social
progress have brought 43 of our States to include in their
general law the principle of the survival of causes of
action against deceased tortfeasors." 348 U.S. at 208,
210. Thus, the Court held that the old common law rule
against the survival of personal tort actions when the
tortfeasor died would not be followed in interpreting a
remedial federal statute. *Id.*[3]

---

statutes abrogating traditional common-law limitations,
courts should adopt a general maritime survivorship rule.
*Id.* at 36–37. The Court instead held narrowly that "a
general maritime survival action cannot include recovery
for decedent's lost future earnings," *id.* at 37, because
"there is little legislative support for such recovery in
survival," *id.* at 35, and such "a remedy . . . is disfavored
by a clear majority of the States," *id.* at 37.

The dissent also suggests that *Robertson v. Wegmann*,
436 U.S. 584 (1978), reaffirmed the old common law rule.
But *Robertson* did no such thing: in that case, it was
undisputed that "the decision as to the applicable survi-
vorship rule [wa]s governed by 42 U.S.C. § 1988," *id.* at
588, which directed federal courts to apply state law.
Thus, as the Court observed, "the survivorship rules in
areas where the courts are free to develop federal common
law—without first referring to state law and finding an
inconsistency—can have no bearing on our decision here."
*Id.* at 593–94 n.11.

    [3]   *See also Moragne v. States Marine Lines, Inc.*, 398
U.S. 375, 390–92 (1970) (recognizing a general maritime

Following the Supreme Court's lead in *Cox* and other modern cases, our court and our sister circuits have repeatedly and appropriately held that remedial claims survive even where federal statutes fail to provide for survivorship. In closely analogous circumstances, we have held that claims survive and can be recovered by the deceased's personal representative, even if the statute does not explicitly provide for such recovery.

In *Phillips v. Shinseki*, 581 F.3d 1358 (Fed. Cir. 2009), a veteran died before judgment on his disability claim was entered in his favor. *Id.* at 1361. His daughter, acting as his personal representative, filed a claim for attorney fees under the Equal Access to Justice Act (EAJA). *Id.* EAJA provides in relevant part that "a court shall award to a *prevailing party* other than the United States fees and other expenses . . . incurred by that party in any civil action . . . ." 28 U.S.C. § 2412(d)(1)(A) (emphasis added). The EAJA's filing provision specifies that the "party seeking an award of fees and other expenses shall . . . submit to the court an application . . . which shows that the party is a *prevailing party* and is eligible to receive an award." *Id.* at § 2412 (d)(1)(B) (emphasis added). Though it was clear that the veteran, not his daughter, was the

_____

wrongful death action because "numerous and broadly applicable statutes, taken as a whole, make it clear that there is no present public policy against allowing recovery for wrongful death"); *Van Beeck v. Sabine Towing Co.*, 300 U.S. 342, 347 (1937) (holding that consistent with "the rule in many of the state courts in which like statutes are in force," a mother's claim under the Merchant Marine Act of 1920 for compensation for the negligent death of her son did not abate at her death); *Carlson v. Green*, 446 U.S. 14, 23 (1980) (holding that a *Bivens* action survives the death of the injured person because it is "a creation of federal law and, therefore, the question [of survival] is a question of federal law").

"prevailing party" for purposes of EAJA, *see also Padgett v. Shinseki*, 643 F.3d 950, 956 (Fed. Cir. 2011), *Phillips* recognized that the EAJA fees claim survived, and "if the right to recover fees on an EAJA claim survives the death of the veteran, there is no reason to hold that the veteran must survive until the EAJA application is filed in order for the veteran's estate to have the right to pursue an EAJA award," in light of EAJA's remedial purposes. *Phillips*, 581 F.3d at 1367; *see also White v. United States*, 543 F.3d 1330 (Fed. Cir. 2008) (holding that even though estates are not among the beneficiaries enumerated in the Public Safety Officers Benefits Act, the estate of a claimant who died before her claim had been processed could collect the statutory benefit). Other circuits have reached similar conclusions about the survivorship of remedial claims.[4] There is no basis for reaching a different result here.

Indeed, our prior decisions under the Act similarly recognize that personal injury claims survive. As stated earlier, vaccine-related injury claims survive death in most situations, including (1) when the petition is filed before death by an injured individual who subsequently dies of non-vaccine-related causes, (2) when the petition is

---

[4]    *See United States v. NEC Corp.*, 11 F.3d 136 (11th Cir. 1993) (qui tam actions under the False Claims Act survive the death of the relator); *Faircloth v. Finesod*, 938 F.2d 513 (4th Cir. 1991) (civil RICO claims survive to be filed by the administratrix of the injured party's estate); *Smith v. No. 2 Galesburg Crown Fin. Corp.*, 615 F.2d 407 (7th Cir. 1980) (Truth in Lending Act claims survive plaintiff's death under federal common law), *overruled on other grounds*, *Pridegon v. Gates Credit Union*, 683 F.2d 182 (7th Cir. 1982); *Dellaripa v. N.Y., New Haven & Hartford R.R. Co.*, 257 F.2d 733 (2d Cir. 1958) (a parent's FELA claims for death benefits and compensation for a child's injuries both survive the parent's death).

filed before death by an injured individual who subsequently dies of vaccine-related causes, and (3) when the petition is filed after death by the estate of an injured individual who dies of vaccine-related causes. If an injury claim survives in all these circumstances, it must survive here as well. Even if in situation (3), the survival of the injury claim could be inferred from the provision of the Act which allows a personal representative to file a petition on behalf of the estate of a person who dies of vaccine-related causes, *see* 42 U.S.C. § 300aa-11(b)(1)(A), there is no statutory language that could be construed as providing for survivorship in the first two situations, where the estate is substituted on the injured person's petition. Nor can survivorship in those two situations be inferred from the Federal Rules of Civil Procedure authorizing substitution; substitution is only permissible if the underlying claim is not "extinguished" on the party's death. Fed. R. Civ. P. 25; *see also* Ct. Fed. Cl. R. 25(a)(1). Whether the claim is extinguished is a question of substantive law. *See* Charles Alan Wright & Arthur R. Miller, 7C *Federal Practice and Procedure: Civil* § 1954 (3d ed. 2012). Thus, injury claims necessarily survive the death of the injured party.

B

With respect to the second question—whether the personal representative of the injured individual's estate may file a petition asserting the surviving cause of action—the government again maintains that suit is barred. The government contends that although a personal representative may be substituted on a *pending* petition filed by an injured individual who died of non-vaccine related causes, that representative cannot file a *new* petition after death, because the Act authorizes a representative to file a petition only on behalf of an injured individual who died of vaccine-related causes. This argument is based entirely on section 300aa-11(b)(1)(A), which states:

(b) Petitioners.

(A) Except as provided in subparagraph (B), any person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or is disabled, *or the legal representative of any person who died as the result of the administration of a vaccine* set forth in the Vaccine Injury Table may, if the person meets the requirements of subsection (c)(1) of this section,[5] file a petition for compensation under the Program.

42 U.S.C. § 300aa-11(b)(1)(A) (emphasis added). In the government's view, this section establishes a rule that "*any person* who has sustained a vaccine-related injury" may file a petition while alive, but authorizes *only* the estates of those "who died as the result of the administration of a vaccine" to file petitions after the vaccine-injured person has died. *Id.* (emphasis added).

The government's argument is inconsistent with both the structure and the text of the Act. The Act never expressly states that a personal representative may *only* bring suit if he or she represents a decedent who died of vaccine-related causes. While the Act specifies that certain persons "may not" file a petition, the personal representative of an individual who died of non-vaccine-related causes is not among them. *See, e.g.*, 42 U.S.C. § 300aa-11(a)(7) (persons who have received a civil settlement "for a vaccine-related injury or death . . . may not file a petition under subsection (b) of this section for such injury or death").

The existence of section 300aa-11(b)(1)(A) does not suggest otherwise. As the dissent acknowledges, the

---

[5]    The requirements of subsection (c)(1) are not relevant here.

interpretive canon *expressio unius est exclusio alteris* applies where "the term left out must have been meant to be excluded." *Chevron U.S.A. Inc v. Echazabal*, 536 U.S. 73, 81 (2002).

The Supreme Court's recent decision in *Marx v. General Revenue Corp.*, 568 U.S. ___, 133 S. Ct. 1166 (2013), is quite similar to the present case. There, the government argued that a provision for the award of costs in the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k(a)(3), impliedly mandated that costs not be awarded in other circumstances. *Marx*, 568 U.S. at ___, 133 S.Ct. at 1175. The Court rejected this theory, stating that

> [t]he argument of . . . the United States depends critically on whether § 1692k(a)(3)'s allowance of costs creates a negative implication that costs are unavailable in any other circumstances. The force of any negative implication, however, depends on context. We have long held that the *expressio unius* canon does not apply "unless it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it," and that the canon can be overcome by "contrary indications that adopting a particular rule or statute was probably not meant to signal any exclusion." In this case, context persuades us that Congress did not intend § 1692k(a)(3) to foreclose courts from awarding costs under Rule 54(d)(1).

*Id.* (citations omitted). Here, similarly, the statutory context does not give rise to a negative implication. As in *Marx*, there is a relevant "background presumption," which is a "highly relevant contextual feature." *Id.* This is the presumption that remedial claims survive.

So, too, the Supreme Court has declined to apply the canon where Congress has "an obvious reason for selecting the [examples] that are addressed" in the statute, and

omitting others.  *Setser v. United States*, 566 U.S. ___,
___, 132 S. Ct. 1463, 1469 (2012).  An obvious reason why
Congress authorized "the legal representative of any
person who died as the result of the administration of a
vaccine" to file a petition in the first instance was to
ensure access to the Act's death benefit.  *See* 42 U.S.C.
§ 300aa-15(2) (providing, "[i]n the event of a vaccine-
related death, an award of $250,000 for the estate of the
deceased").

Death benefit claims and personal injury claims are
distinct causes of action with distinct beneficiaries.  A
personal injury claim belongs to the injured person, and
upon death, passes to the estate.  *See Prosser & Keeton*
§ 126, at 942 ("The survival action . . . is not a new cause
of action [but] the cause of action held by the decedent
immediately before or at death, now transferred to his
personal representative.").  In contrast, a death benefit
claim belongs not to the decedent, but to the decedent's
survivors or estate.  Thus, statutes that authorize wrong-
ful death actions typically include provisions specifying
the person authorized to file suit (usually the personal
representative), *see generally* Robert VanHorne, *Wrongful
Death Recovery: Quagmire of the Common Law*, 34 Drake
L. Rev. 987, 1010 (1984), as do federal workers' compensa-
tion statutes, *see, e.g.*, FELA, 45 U.S.C. § 51 (making
employers "liable . . . in case of the death of such employ-
ee, to his or her personal representative").  The Vaccine
Act is no exception.  Section 300aa-11(b)(1)(A) simply
authorizes the personal representative of a qualifying
estate to sue for death benefits.  In other words, "the legal
representative of any person who died as the result of the
administration of a vaccine" in section 300aa-11(b)(1)(A)
does not restrict who may file a petition for injury com-
pensation, but rather establishes that if the estate is
eligible for death benefits, the representative of the estate
may file a petition on the estate's behalf.

The legislative history of the Act demonstrates a direct relationship between the provision of a death benefit payable to the estate and the addition of the "legal representative" language to section 300aa-11(b)(1)(A). Of the two draft bills under consideration by Congress, S. 827 and H.R. 1780, only the Senate bill, which in large part became the basis for the final legislation, provided for a death benefit payable to the *parents* of the deceased, and for the recovery of expenses resulting from a vaccine-related injury that were incurred before death. S. 827 originally provided that:

> (2) In the event of a death, compensation of not less than $300,000 and not more than $700,000 for the parents of the deceased (or other appropriate family member as determined by the court), plus such expenses as may have been incurred under paragraph (1) prior to death.

National Childhood Vaccine Improvement Act of 1985, S. 827, 99th Cong. (introduced April 2, 1985), § 2107(a)(2). S. 827 made no reference to suit by a personal representative, except in the case of a minor. *See id.* at § 2102(b). In the subsequent House bill, H.R. 5184, and likewise in the final House bill, H.R. 5546, (1) the death benefit was retained, but made payable to the *estate*, not the parents; (2) the provision regarding suit by the legal representative of the estate was added; and (3) the reference to recovery of expenses "prior to death" was omitted. These provisions of H.R. 5546 were then enacted into law. *See* National Childhood Vaccine Injury Act of 1986, H.R. 5546, 99th Cong., (1986) (enacted as Title III of Pub. L. 99-660, §§ 2111(b)(1), 2115(a)(2)). Thus, the final version of the Act represents a legislative choice to make the death benefit payable to the injured person's *estate* upon suit by the personal representative, and the addition of the "representative" language to section 300aa-11(b)(1)(A) was linked to the provision authorizing the death benefit payable to the estate. Moreover, the final legislation

became deliberately silent as to the recovery of pre-death expenses, leaving such issues to the background rules of common law.

In construing an enacted law, the Supreme Court has often looked to the history of amendments made to the draft legislation. *See, e.g., Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 524–26 (1989) (recognizing that conferees had "access to all of Rule [of Evidence] 609's precursors, particularly the drafts prepared by the House Subcommittee and Senate Judiciary committee," and construing the final Rule in light of draft provisions that "deliberately were eliminated"); *Schilling v. Rogers*, 363 U.S. 666, 672–73 (1960) (construing the enacted statute in light of the omission of draft provisions included in a House bill); *Schwegmann Bros. v. Calvert Distillers Corp.*, 341 U.S. 384, 390–91 (1951) (construing a statute to reflect "continuity" between the Senate bill ultimately enacted and prior draft legislation). In particular, the deletion of the draft language linking recovery of pre-death expenses to the death benefit "strongly militates against a judgment that Congress intended a result that it expressly declined to enact," *see Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 200 (1974), *i.e.*, that pre-death expenses could only be recovered by the personal representative of the estate if the vaccine-injured individual died of vaccine-related causes.

Finally, other aspects of the Act's legislative history make clear that Congress intended the Act to treat injured individuals inclusively and equitably, even after death. House Report No. 99-908, which "contains an 'authoritative' account of Congress' intent" in drafting the Act, *Bruesewitz*, 562 U.S. at ___, 131 S.Ct. at 1083 (Breyer, J., concurring), states that *all* personal representatives may file petitions on behalf of vaccine-injured persons:

> *Subsection (b)—Petitioners.*—A petition may be filed by *any person (or his or her legal representa-*

*tive) who has been injured* by a vaccine listed in the Vaccine Injury Table.

H.R. Rep. No. 99-908, at 14 (1986), *reprinted in* 1986 U.S.C.C.A.N. at 6355 (second emphasis added).[6]  In light of this inclusive language, it is unsurprising that the House Report never draws any distinctions between the personal representatives of injured individuals who died before or after filing, or between the injury compensation claims of those who die of vaccine-related causes or unrelated causes.

## CONCLUSION

We conclude that the vaccine-related injury claims of an individual who dies of non-vaccine-related causes survive death, and that the decedent's personal representative may file a petition to recover on those claims after death.  We remand to the Special Master for proceedings consistent with this opinion.

**REVERSED and REMANDED**

---

[6]  The relevant statutory language—"any person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or is disabled, or the legal representative of any person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table"—was the same at the time of the House Report.  *Compare* 42 U.S.C. § 300aa-11(b)(1)(A) (2006) *with* National Childhood Vaccine Injury Act of 1986, H.R. 5546, 99th Cong., § 2111(b)(1) (1986) (enacted as Title III of Pub. L. 99-660).

# United States Court of Appeals for the Federal Circuit

---

**STEPHANIE VINO FIGUEROA, as Personal Representative of the Estate of MANNY FIGUEROA, deceased,**

*Petitioners-Appellants,*

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES,**

*Respondent-Appellee.*

---

2012-5064

---

Appeal from the United States Court of Federal Claims in 10-VV-750, Judge Lynn J. Bush.

---

PROST, *Circuit Judge*, dissenting.

The majority's opinion clearly conflicts with binding Supreme Court precedent, the plain language of the Vaccine Act, and decades of consistent decisions by the United States Court of Federal Claims. I must respectfully dissent.

I

The majority holds that Ms. Figueroa's petition with the National Vaccine Compensation Program was permissible because she was the legal representative of Mr. Figueroa's estate and Mr. Figueroa's cause of action for

injuries he sustained from a vaccine survived his unrelated death. To reach that conclusion, the majority does not rely on any express language in the Vaccine Act; the Act does not specifically provide for the survival of such causes of action under the Program. Instead, the majority reads a "presumption" into federal common law that personal injury actions arising under federal law survive the death of a plaintiff absent "a statutory provision to the contrary." Majority Op. at 10. Therefore, in the majority's view, because the Vaccine Act is silent regarding survivorship, causes of action arising under the Vaccine Act survive.

The majority's conclusion, however, is directly opposed to the outcome mandated by Supreme Court precedent. The Court has held that, if a federal law creating a remedial cause of action for personal injuries is silent regarding survivorship, causes of action under the law do not survive the death of a plaintiff. *Mich. Cent. R. Co. v. Vreeland*, 227 U.S. 59, 67 (1913) (holding that a cause of action for personal injury under federal law is extinguished by the death of the injured party "unless th[e] Federal statute which declares the liability . . . asserted provides that the right of action shall survive the death of the injured [person]").[1] That precedent has never been overruled.[2]

---

[1]   The Supreme Court has only recognized one—unsurprising—exception to that rule: if the defendant in a *Bivens* action caused the death of the plaintiff through his unconstitutional acts, the plaintiff's claim survives his death. *Carlson v. Green*, 446 U.S. 14, 24-25 (1980). That holding simply extends to *Bivens* actions Congress's express abrogation of the common law rule for § 1983 actions. *See* 42 U.S.C. § 1988.

[2]   The Supreme Court has directly applied the common law rule many times before and after its decision

While the majority acknowledges the existence of the Court's holding in *Michigan Central*, it brushes it aside because, "as states enacted legislation providing for survival, the common law rule changed." Majority Op. at 10-11.[3] The majority's reliance on state law survival statutes to displace the holding in *Michigan Central* cannot be correct. As the *Michigan Central* Court recognized, many states had passed statutes providing for survival upon the death of an injured plaintiff. It explained, however, that survivability of personal injury

---

in *Michigan Central*. *See, e.g.*, *Florida ex rel. Vars v. Knott*, 308 U.S. 506 (1939) (dismissing appeal because the cause of action abated at the death of the plaintiff); *Seale v. Georgia*, 209 U.S. 554 (1908) (same); *Kaipu v. Pinkham*, 206 U.S. 566 (1907) (same); *Beard v. Arkansas*, 207 U.S. 601 (1907) (same).

[3]    The majority asserts that "the common law [for survival] rule changed" because "states enacted legislation providing for survival." Majority Op. at 10-11. According to the majority, Congress therefore enacted the Vaccine Act in 1986 against "this changed legal background," not the common law rule espoused by *Michigan Central*. *Id.* But the Supreme Court reaffirmed the continued applicability of *Michigan Central* four years after Congress passed the Vaccine Act. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990). And, although it did not expressly address the entire holding in *Michigan Central*, the Court in *Miles* reiterated that, "under common law," a "[plaintiff's] personal [injury] cause of action does not survive the [plaintiff's] death." *Id.* at 33. If in fact "th[at] common law rule changed" by 1986 as the majority asserts, the Supreme Court seems to have missed that point.

actions created by federal law depends only on Congress's choice to provide for survival.[4]

> The statutes of many of the states expressly provide for the survival of the right of action which

---

[4]    Moreover, Congress knows how to provide, if and when it wishes, for survival of personal actions under federal law. *See, e.g.*, Employer's Liability Act, 45 U.S.C. § 59 (expressly providing for survival of an action); 28 U.S.C. § 2404 (authorizing survival of an action upon death of a defendant if the action was "commenced by or on behalf of the United States"); 42 U.S.C. § 1988 (modifying common law survivability for civil rights actions); 42 U.S.C. § 1986 (expressly creating right of survivorship for certain actions). Given the "presumption" of survivability they rely upon for their holding, the majority must view those provisions by Congress as completely unnecessary. I choose, however, to conclude that Congress added them because it believed them to be necessary. In fact, unlike the majority claims, exceptions to the common law rule that personal injury suits die with an injured plaintiff has never been uniformly established. *See, e.g.*, Wright & Miller, 7C *Fed. Prac. & Proc. Civ.* § 1954 (3d ed. 2012) (discussing how the federal rule for the survivability of tort actions is not "well-established" and that the move by federal courts towards survivability of such actions is only a "discernable trend"); *Malcolm v. King*, 686 So. 2d 231, 235 (Ala. 1996) (holding, in the context of a medical malpractice claim, that Alabama law dictates that "an unfiled tort claim will generally not survive the death of the person with the claim"); *Vulk v. Haley*, 736 P.2d 1309, 1313 (Idaho 1987) (holding that "an action for pain and suffering does not survive the death of the injured"); Minn. Stat. Ann. § 573.02, Subd. 2 (2006) (permitting trustee to only "maintain" a personal injury action after death of injured person for causes unrelated to the tortuous injury, but not file one).

the injured person might have prosecuted if he had survived, but unless this Federal statute which declares the liability here asserted provides that the right of action shall survive the death of the injured employee, it does not pass to his representative, notwithstanding state legislation. The question of survival is not one of procedure, but one which depends on the substance of the cause of action.

*Mich. Cent.*, 227 U.S. at 67 (quotation marks omitted).

Nor does it matter, as the majority contends, that subsequent Supreme Court cases "nearly on point" provide for the survival of causes of actions when individuals other than an injured plaintiff die. Majority Op. at 11-12. The equitable and common law considerations are different in those situations. None of the cases cited by the majority overrule or abrogate *Michigan Central*,[5] and we, therefore, should follow it.[6]

---

[5] In *Cox v. Roth*, the Supreme Court discussed how forty-three states provided, by statute, that causes of actions survived the death of an alleged *tortfeasor*, but not a plaintiff. 348 U.S. 207, 210 (1955). The Court never addressed the effect of the death of an injured party. And in *Van Beek v. Sabine Towing Co.*, the Court held that an action for wrongful death survived the death of an estate's *administrator*, not an injured plaintiff. 300 U.S. 342, 349 (1937). In that case, the Court even stated that the injured party's cause of action would have survived only because the relevant federal statute expressly provided for survival.

Nor is it compelling that some courts have relied on the Supreme Court's holding in *Ex parte Schreiber*, 110 U.S. 76 (1884), to declare that remedial, but not penal, actions under federal law generally survive. *Ex parte Schreiber* simply does not stand for that broad proposi-

## II

The majority further compounds its error by ignoring the plain language of 42 U.S.C. § 300aa-11(b)(1)(A). That subsection states:

> any person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or is disabled, or the legal representative of any person who died as the result of the administration of a vaccine . . . may, if the person meets the requirements of subsection (c)(1) of this section, file a petition for compensation under the Program.

42 U.S.C. § 300aa-11(b)(1)(A). As that plain language demonstrates, Congress specified two types of individuals who may initially file a petition for compensation under the Program: individuals who have been harmed by a vaccine and legal representatives of individuals who have

---

tion. The *Ex parte Schreiber* Court was discussing only the effect of the death of a tortfeasor on the survival of a plaintiff's cause of action. That should be clear from the Court's later statement in *Michigan Central* that "[n]othing is better settled than that, at common law, the right of action for an injury to the person is extinguished by the death of the party injured." 227 U.S. at 67.

6    The Supreme Court has declined to create the majority's federal common law rule in the only case it decided since *Michigan Central* that presented such a rule. *Roberson v. Wegmann*, 436 U.S. 584, 587-88 (1978) (holding that a federal civil rights action abated at death under Louisiana law and dismissing the Fifth Circuit's creation of a federal common law rule for survival of remedial actions under federal law even though there was a "marked tendency of the federal courts to allow actions to survive").

been harmed by vaccine. And Congress further specified particular classes of legal representatives that could file a petition: those who represent minors, those who represent disabled persons, and those who represent individuals who died from vaccine-related causes. The petition in this case, of course, does not fall into any of those categories, as Ms. Figueroa is the legal representative of an individual who died from non-vaccine-related causes.

The Supreme Court has instructed how to interpret a statute that includes such a specific listing of a related series of individuals who may access a remedy for a wrong through a particular process: the list of individuals should be read as exhaustive and exclusive of others "in circumstances supporting a sensible inference that the term left out must have been meant to be excluded." *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 81 (2002); *see also Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168-69 (2003) (discussing that the canon *expressio unius est exclusio alterius* applies when a statute lists members of an "associated group or series" that go "hand in hand"); *Nat'l R. R. Passenger Corp. v. Nat'l Ass'n of R. R. Passengers*, 414 U.S. 453, 458 (1974) ("[W]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies. When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode." (citations and quotation marks omitted)). Such an inference is sensible here, for it is "fair to suppose that Congress considered [permitting petitions by other types of legal representatives] and meant to say no to it." *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1175 (2013) (discussing how *expressio unius est exclusio alterius* applies if it is "fair to suppose that Congress considered the unnamed possibility and meant to say no to it"). In the Vaccine Act, Congress defined the particular process by which compensation for harms caused by vaccines would be compensated under the Program. In § 300aa-

11(b)(1)(A), it delineated the legal representatives that would qualify to file a petition based on the type of individual whom they represented, including a type of deceased individual. It seems quite sensible, therefore, to conclude that Congress considered all the types of individuals for whom it wished to allow recovery under the Program through a petition by a legal representative and specifically chose to exclude individuals who died of non-vaccine related causes.[7]

The majority, however, insists that Congress could not have meant for the list of legal representatives in § 300aa-11(b)(1)(A) to be exhaustive because barring petitions from legal representatives like Ms. Figueroa would "make[] no sense" and would illogically "attribute

---

[7] For nearly two decades, the Court of Federal Claims has also interpreted § 300aa-11(b)(1)(A) to bar petitions from legal representatives of individuals who died of non-vaccine related causes. *See Sigal v. Sec'y of Health & Human Servs.*, 2008 WL 2465790 (Fed. Cl. Spc. Mstr. 2008) (not reported); *Cohn v. United States*, 44 Fed. Cl. 658, 659-60 (Fed. Cl. 1999) (same); *Conrad v. Sec'y of Health & Human Servs.*, 1:90-vv-2820, D.I. 44 (Fed. Cl. 1997) (same) *Buxkemper v. Sec'y of Dep't of Health & Human Servs.*, 32 Fed. Cl. 213, 223-25 (Fed. Cl. 1994) (same). Fifteen years ago, we affirmed that interpretation of the Vaccine Act, and Congress has since amended the language of 42 U.S.C. § 300aa-11 twice without any change to subsection (b)(1)(A). *Conrad v. Sec'y of Health & Human Servs.*, 1998 U.S. App. LEXIS 6155 (Fed. Cir. 1998), *cert denied*, 525 U.S. 820 (1998); *see Vaccine Injury Compensation Program Modification Act*, Pub.L. 105-277, Div. C, Title XV, § 1502, 12 Stat. 2681-741 (Oct. 21, 1998) (amending the language of 42 USCA § 300aa–11 but not 42 U.S.C. § 300aa-11(b)(1)(A)); *Children's Health Act of 2000*, Pub.L. 106-310, Div. A, Title XVII, § 1701(a), 114 Stat. 1151 (Oct. 17, 2000) (same).

to Congress a purpose to deny some claimants compensation while allowing compensation for others who suffer identical vaccine-related injuries." Majority Op. at 8. But the conclusion I reach, based on the clear statutory language, is neither nonsensical nor illogical; in fact, it is reflected in how the Program routinely operates.

As first implemented, the Program limited compensation to those petitioners who died from vaccine-related causes or to those petitioners who suffered from a vaccine-related injury for more than six months. H.R. 5546, 99th Cong. § 2211(c)(1)(D), *as amended by*, PL 100–203, December 22, 1987, 101 Stat 1330; *see* 42 U.S.C. § 300aa-11(c)(1)(D) (current provision with similar restrictions). So if two individuals suffered identical vaccine-related injuries from the same batch of vaccines administered on the same day and one died five months later of vaccine-related causes but the other five months later from an unfortunate accident, only the individual who died from vaccine-related causes would be eligible for compensation under the Program. It is not nonsensical, in my view, to conclude that Congress desired that outcome and wanted to compensate only *ongoing* disability—which obviously would expire at death. *See* H.R. REP. 100-391, 698-99, 1987 (discussing how the Program was designed to be limited "to cases in which a person dies from the result of vaccine or in which a person incurs . . . medical expenses . . . *and suffers ongoing disabilities*" (emphasis added)). Reading the Vaccine Act to determine the permissibility of petitions by cause of death is in no way abnormal or irrational in context of the whole Act; nor is it illogical or unfair to read § 300aa-11(b)(1)(A) to bar certain petitions from legal representatives based on the cause of death of the individuals whom they represent.

Despite that sensible reading of § 300aa-11(b)(1)(A), the majority also claims that it discovered Congress's "obvious" purpose for listing the legal representative of an individual who died from vaccine-related causes in

§ 300aa-11(b)(1)(A): to enable recovery of the death bene-
fit provided by the Program to the estates of individuals
who died from vaccine-related causes. Majority Op. at 17-
18. I, unfortunately, cannot decipher how the majority
reaches this conclusion. It juxtaposes disparate sections
from legislation originating in separate houses of Con-
gress to find meaning in the final language of the Vaccine
Act. But comparing language from a draft bill in the
Senate to language in a draft bill in the House reveals
nothing about the meaning of the language in § 300aa-
11(b)(1)(A) without accounting for the hundreds of other
differences in how recovery was limited in the multiple
circulating drafts of the Program. For example, the
Senate bill the majority relies upon provided that "[a]ny
eligible person may, through counsel or otherwise, seek
compensation under the Program." S. 827, 99th Cong.
§ 2204(a). The majority suggests no reason why Congress
failed to use that language, which certainly would have
permitted legal representatives of estates to recover the
death benefit. Moreover, the majority simply ignores that
the House bill—and the language in it—was ultimately
used because the Senate entirely removed the Program
from its bill to "leave[] for resolution in the 100th Con-
gress the still pressing issues of victim's compensation
and tort reform." Senate Report 99-483, at 5, accompany-
ing S. 827 as reported Sept. 24, 1986. Thus, the language
in S. 827, upon which the majority's rationale hinges,
*never even made it out of committee*; it was removed
because the Senate desired to postpone action and extend
debate into the next Congress—not because it preferred
the House's language. Presented with obvious alterna-
tives, it seems telling that the majority cannot find a
single statement of intent in the thousands of pages of the
legislative history of the Vaccine Act that supports the
"obvious" purpose it declares for the language in § 300aa-
11(b)(1)(A).[8]

---

[8]    The majority claims that the Supreme Court has

## III

The majority's opinion does not comport with either Supreme Court precedent or the plain language of the Vaccine Act.  I respectfully dissent.

---

"often" engaged in similar analysis of Congressional purpose it does here.  Majority Op. at 20.  It is no secret that the Supreme Court has, in certain cases, found meaning in drafting history.  But in such cases, the Court relied on the clear import of drafting changes by Congress.  As discussed, the import of "changes" found by the majority here is simply not clear.