# United States Court of Appeals for the Federal Circuit

---

**HARRY TEMBENIS AND GINA TEMBENIS,**
ADMINISTRATORS OF THE ESTATE OF **ELIAS TEMBENIS,** DECEASED,
*Petitioners-Appellees,*

**v.**

**SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Respondent-Appellant.*

---

2013-5029

---

Appeal from the United States Court of Federal Claims in No. 03-VV-2820, Senior Judge James F. Merow.

---

Decided: October 28, 2013

---

JOSEPH PEPPER, Conway, Homer & Chin-Caplan, P.C., of Boston, Massachusetts, argued for petitioners-appellees. On the brief was RONALD C. HOMER.

MICHAEL E. ROBINSON, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for the respondent-appellant. With him on the brief were STUART F. DELERY, Principal Deputy Assistant Attorney General, and MICHAEL S. RAAB, Attorney. Of counsel was RYAN D. PYLES, Attorney.

---

Before O'MALLEY, CLEVENGER, and TARANTO, *Circuit Judges.*

CLEVENGER, *Circuit Judge.*

This is a National Childhood Vaccine Injury Act of 1986 ("Vaccine Act") case. *See* 42 U.S.C. § 300aa-1 *et seq.* The question before us is whether the estate of a petitioner who dies prior to judgment is entitled to compensation for lost future earnings. The United States Court of Federal Claims ("Claims Court") answered in the affirmative. *Tembenis v. Sec'y Health & Human Servs.*, No. 03-2820V (Fed. Cl. Oct. 19, 2012) ("*Trial Op.*"). Because eligibility for future lost earnings under § 300aa-15(a)(3)(B) requires the person suffering from a vaccine-related injury to survive the compensation judgment, we reverse.

## BACKGROUND

When he was approximately four months old, Elias Tembenis received a Diptheria-Tetanus-acellular-Pertussis ("DTaP") vaccine. Elias developed a seizure disorder shortly afterwards, and his parents, Harry and Gina Tembenis, filed a Petition for Vaccine Compensation on his behalf. While the petition was pending, Elias died as a result of his seizure disorder at the age of seven. The caption of the case was then amended to name Harry and Gina Tembenis, administrators of Elias' estate, as petitioners.

The Tembenis' petition proceeded, and, in 2010, a special master determined that the DTaP vaccine caused Elias' epilepsy and resulting death. *Tembenis v. Sec'y of Health & Human Servs.*, No. 03-2820V, 2010 WL 5164324 (Fed. Cl. Spec. Master Nov. 29, 2010). The Secretary of Health and Human Services ("Secretary") and the estate agreed that the Secretary would pay the $250,000 death

benefit under § 300aa-15(a)(2) and would also pay $175,000 for actual pain and suffering and past unreimbursable expenses under §§ 300aa-15(a)(1) and (a)(4). The parties did not agree, however, on whether Elias' estate was entitled to recover future lost earnings under § 300aa-15(a)(3)(B). The special master, after receiving briefing from the parties on this issue and relying on our decisions in *Zatuchni v. Sec'y Health & Human Servs.*, 516 F.3d 1312 (Fed. Cir. 2008), and *Edgar v. Sec'y of Health & Human Servs.,* 989 F.2d 473 (Fed. Cir. 1993), determined that the estate was entitled to future lost earnings. *Tembenis v. Sec'y Health & Human Servs.*, No. 03-2820V, 2011 WL 5825157 (Fed. Cl. Spec. Master Oct. 26, 2011).

The Secretary reserved her right to challenge the future lost earnings award, but proffered the sum of $659,955.61 as a measure of the lost earnings. The petitioners agreed, and the special master awarded petitioners a lump sum payment of $1,084,955.61, the sum of the $425,000 in uncontested awards and the $659,955.61 in contested future lost earnings.[1]

The Secretary subsequently filed a Motion for Review with the Claims Court, limited to the question of whether the Tembenis estate is entitled to any future lost earnings award. The Secretary made no challenge to the special master's causation finding or to the awards of the death benefit, pain and suffering, and past unreimbursable expenses. The Claims Court also read our decisions in *Zatuchni* and *Edgar* to support recovery for lost future earnings for a child who died as a result of his vaccine-

---

[1]   Our court has already affirmed the award of $425,000 in uncontested damages. *See Tembenis v. Sec'y Health & Human Services*, No. 2013-5029 (Fed. Cir. May 16, 2013) (order granting partial summary affirmance to petitioners-appellees).

related injury before a compensation judgment was entered, and thus affirmed the special master's future lost earnings award. *Trial Op.* at 2-3.

The Secretary now appeals to our court, again arguing that an estate cannot recover lost future earnings under § 300aa-15(a)(3)(B) when the person injured by a vaccine dies before entry of a compensation judgment. We have jurisdiction under 42 U.S.C. § 300aa-12(f), and, as this is purely a question of statutory interpretation, we review the decision of the Claims Court de novo, *Locane v. Sec'y Health & Human Servs.*, 685 F.3d 1375, 1379 (Fed. Cir. 2012). Before this case, no compensation award under the Vaccine Act had allowed future lost earnings for the estate of a deceased petitioner. The interpretive question before the court is thus one of first impression.

## DISCUSSION

Congress enacted the Vaccine Act to stabilize the vaccine market and facilitate compensation for vaccine-related deaths and injuries. *See Lowry v. Sec'y Health & Human Servs.*, 189 F.3d 1378, 1381 (Fed. Cir. 1999). Among other things, the Vaccine Act established the National Vaccine Injury Compensation Program, *see* 42 U.S.C. § 300aa-10(a), which provides compensation for vaccine-related injuries or death through a no-fault system "'designed to work faster and with greater ease than the civil tort system.'" *Bruesewitz v. Wyeth LLC*, 131 S. Ct. 1068, 1073 (2011) (quoting *Shalala v. Whitecotton*, 514 U.S. 268, 269 (1995)).

A person injured by a vaccine, or his or her legal representative, may file a petition for compensation in the Claims Court, naming the Secretary as respondent. A special master then "makes an informal adjudication of the petition," *Bruesewitz*, 131 S. Ct. at 1073, subject to further review by a judge of the Claims Court and our court, s*ee* 42 U.S.C. § 300aa-12(e)(2) and (f).

The Vaccine Act provides several forms of compensation to those who show that they were injured by a vaccine. *See* 42 U.S.C. §§ 300aa-15(a)(1) through (a)(4). Because the different forms of compensation under § 300aa-15(a) are interrelated, we consider each to determine if subsection (a)(3)(B) is restricted as the Secretary asserts.

Under subsection (a)(1), a vaccine-injured person may recover both past and predicted "actual unreimbursable expenses" which result from the vaccine-related injury. § 300aa-15(a)(1). This includes a vast array of expenses, such as those "for diagnosis, medical or other remedial care, rehabilitation, developmental evaluation, special education, vocational training and placement, case management services, counseling, emotional or behavioral therapy, residential and custodial care and service expenses, special equipment, related travel expenses, and facilities determined to be reasonably necessary." *Id.* at § 300aa-15(a)(1)(B)(iii). An award under (a)(1) is intended to alleviate the financial burden of the petitioner's medical treatment. The estate of a person who is dead at the time of the award can recover past expenses, but obviously has no future treatment-related expenses. *Zatuchni*, 516 F.3d at 1318-19.

Subsection (a)(4) allows recovery for "actual and projected pain and suffering and emotional distress from the vaccine-related injury." 42 U.S.C. § 300aa-15(a)(4). An award under (a)(4) ameliorates, to some extent, the injured person's pain and suffering. As under subsection (a)(1), when a claimant is deceased at the time of a compensation award, the estate can recover for pain and suffering and emotional distress from the time of the injury until the date of death. *See Zatuchni*, 516 F.3d at 1318-19. Taken together, both (a)(1) and (a)(4) are attempts to make the injured person whole.

Similarly, subsection (a)(3) is also designed for a compensatory purpose. Under (a)(3), a vaccine-injured person may recover lost earnings. Subsection (a)(3) provides:

(A) In the case of any person who has sustained a vaccine-related injury after attaining the age of 18 and whose earning capacity is or has been impaired by reason of such person's vaccine-related injury for which compensation is to be awarded, compensation for actual and anticipated loss of earnings determined in accordance with generally recognized actuarial principles and projections.

(B) In the case of any person who has sustained a vaccine-related injury before attaining the age of 18 and whose earning capacity is or has been impaired by reason of such person's vaccine-related injury for which compensation is to be awarded and whose vaccine-related injury is of sufficient severity to permit reasonable anticipation that such person is likely to suffer impaired earning capacity at age 18 and beyond, compensation after attaining the age of 18 for loss of earnings determined on the basis of the average gross weekly earnings of workers in the private, non-farm sector, less appropriate taxes and the average cost of a health insurance policy, as determined by the Secretary.

42 U.S.C. § 300aa-15(a)(3). Recovery for past and future lost earnings is compensation for the lost wages which would have otherwise provided the income necessary to sustain the person. *See Sarver v. Sec'y Health & Human Servs.*, No. 07-307V, 2009 WL 8589740, at \*10 (Fed. Cl. Spec. Master Nov. 16, 2009).

Subsection (a)(3) treats those over 18 differently from those under 18. Persons over 18 may recover both "actual and anticipated" lost earnings. § 300aa-15(a)(3)(A). By allowing recovery for actual as well as anticipated future

earnings, subsection (a)(3)(A) contemplates that a person who was injured by a vaccine after attaining the age of 18 could have entered or remained in the workforce. The lost earnings award is tailored to the individual "in accordance with generally recognized actuarial principles and projections." *Id.* Actual lost earnings are available to an estate and may be recovered for the time between the injury and the date of death. *Zatuchni*, 516 F.3d at 1315. Anticipated lost earnings are available to those who are alive at the time of the award and are expected to suffer from a lost earning capacity going forward, but death terminates any anticipation of future lost earnings.

For persons under 18, subsection (a)(3)(B) sets forth another inquiry. In order to be eligible for lost earnings, the minor must have an injury: (1) which is vaccine-related; (2) which impaired the minor's earning capacity; and (3) which is "of sufficient severity to permit reasonable anticipation that such person is likely to suffer impaired earning capacity at age 18 and beyond." 42 U.S.C. § 300aa-15(a)(3)(B). In other words, the court asks how the vaccine-related injury will affect the person's earning capacity when he or she reaches age 18. If the court concludes that a minor is indeed suffering a vaccine-related injury, which impairs his or her earning capacity, and the minor's earning capacity is likely to remain impaired at age 18 and beyond, the court awards an amount "determined on the basis of the average gross weekly earnings of workers in the private, non-farm sector . . . as determined by the Secretary." *Id.* A person who is injured before 18 is only eligible for "compensation after attaining the age of 18." *Id.* In other words, subsection (a)(3)(B) only allows recovery of *future* lost earnings.

Because the statutory language does not expressly require that a claimant injured by a vaccine before the age of 18 be alive to receive future lost earnings, the appellees argue that no such restriction should be read into the statute. But the words of the statute also do not expressly

state that an estate can recover for future lost earnings of a decedent. An interpretive issue thus exists within the statute. The Secretary fairly states the issue as whether compensation for lost future earnings under subsection (a)(3)(B) is limited to claimants who are alive at the time a judgment of compensation is entered.

The statute refers to the impairment of future earnings capacity, not to the termination of such capacity, and thus assumes that the claimant has some potential capacity to earn. "Impaired" thus points to the diminished earnings capacity of a living person, not the hypothetical earning capacity of a deceased person. It is presumed that a person who is alive at the time a future lost earnings compensation award is made would have had an earning capacity as of age 18 but for the vaccine-related injury. The statute thus predicts future lost earnings to compensate for life beyond the age of 18. Where a claimant is deceased, however, the same prediction cannot rationally be made. Subsection (a)(3)(B) presupposes an expectation of future earnings to be received after attaining the age of 18. When the claimant dies before compensation is awarded, there is no reasonable expectation that the claimant would attain the age of 18. We thus conclude that the most natural reading of subsection (a)(3)(B) is to limit the eligibility for lost future earnings to persons who are alive at the time the compensation award is made.

Our interpretation of subsection (a)(3)(B) is in harmony with subsection (a)(3)(A), which as noted above provides compensation for loss of earnings for persons injured by a vaccine after attaining the age of 18 in two categories, actual and anticipated. An anticipated loss of future earnings for a person over age 18 looks beyond previous actual earnings to the future, a prediction that cannot reasonably be made if the claimant is deceased at the time the prediction is made. Entitlement to an award of future lost earnings depends upon the claimant being alive at the time the compensation judgment is entered.

Aside from the language of subsection (a)(3)(B) itself, other sections of the Vaccine Act support our interpretation. Another subsection of § 300aa-15, subsection (f)(4)(A), directs payment to be made "on the basis of the net present value of the elements of the compensation . . . in a lump sum." When awarding lost future earnings to a living minor, the special master calculates "the present value of the expected future stream of earnings that has been lost." *Edgar*, 989 F.2d at 476. The award is not contingent on the petitioner living to 18, and the petitioner does not wait until age 18 to receive the lump sum. *Id.* at 477. However, a deceased petitioner has no post-18 "expected future stream of earnings" to be awarded. The present value of the expected future stream of earnings is zero.

Looking beyond § 300aa-15, 42 U.S.C. § 300aa-13(b)(1) instructs the special master to consider "the entire record and the course of the injury, disability, illness, or condition until the date of the judgment of the special master or court" when awarding compensation. *See also McAllister v. Secretary of Health & Humans Services*, 70 F.3d 1240, 1243 (Fed. Cir. 1995) (interpreting § 300aa-13(b)(1) to require the special master to take any changes in the petitioner's condition into account when awarding damages). Awarding the petitioners both lost future earnings and a death benefit would contravene § 300aa-13(b)(1). In order to award lost future earnings, the special master would have to consider Elias' injury up to a point just prior to his death. That snapshot of Elias' condition would not entitle Elias to a death benefit. Instead, to receive the death benefit, the special master would have to consider the course of Elias' injury to a point post-death. Essentially, the Tembenis' are asking that the special master take two snapshots of Elias' condition: one just prior to death and one just after death. This approach would contradict § 300aa-13(b)(1) and *McAllister*, both of which require the special master to

consider "the entire record and course of the injury" up to the date of compensation judgment. *See also Sarver*, 2009 WL 8589740 at *8-9.

The last form of compensation available under the Vaccine Act is the so-called death benefit under § 300aa-15(a)(2). *Id.* ("In the event of a vaccine-related death, an award of $250,000 for the estate of the deceased."). This fixed amount is for the benefit of the person's estate. *See Figueroa v. Sec'y Health & Human Servs.*, 715 F.3d 1314, 1323-24 (Fed. Cir. 2013) (explaining the legislative history of § 300aa-15(a)(2)). Obviously, a person who is alive at the time of the award cannot recover under (a)(2). Subsection (a)(2) is the only type of compensation that is not designed to reimburse or replace an injured person's own losses arising from his or her vaccine-related injury. Put simply, except for the death benefit of $250,000, under the Vaccine Act's entitlements to compensation, no element of *future* damages survives a claimant's death.

Our analysis of the different forms of compensation available under § 300aa-15(a) is consistent with tort law principles. Generally, the estate of a person who dies may seek compensation on two related fronts. First, compensation under a wrongful death statute is designed to compensate the survivors or the estate of the deceased for losses they have sustained. Second, the estate may also pursue, under a survival statute, damages which the decedent could have recovered had he lived. *See* 1 Speiser & Rooks, RECOVERY FOR WRONGFUL DEATH § 1:13; RESTATEMENT (SECOND) OF TORTS § 925 & cmt. a. (1979).

Thus, "[i]n a survival action, a claim for lost earnings embraces only the earnings lost up to the time of death." Speiser & Rooks at § 1:14, citing *Jones v. Flood*, 716 A.2d 285 (Md. 1998); *see also* RESTATEMENT (SECOND) OF TORTS § 926 & cmt. a. (1979) ("Under statutes providing for the survival or revival of tort actions . . . the death of the injured person limits recovery for damages for loss or

impairment of earning capacity, emotional distress and all other harms, to harms suffered before the death."). Future lost earnings are then recovered under a wrongful death statute. *See* RESTATEMENT (SECOND) OF TORTS § 925 cmt. b. (1979).

Applying these concepts to the Vaccine Act, compensation under §§ 300aa-15(a)(1), (3), and (4) is analogous to recovery under a survival statute, while § 300aa-15(a)(2) aligns to a wrongful death statute. The recovery under §§ 300aa-15(a)(1), (3), and (4) is specific to the injured person, while 15(a)(2) is an award "for the estate of the deceased." *Id.* § 300aa-15(a)(2). As explained above, an estate recovers all past damages under the survival statutes to compensate for losses personal to the deceased. Compensation for lost future earnings of a deceased would only benefit the estate, not the deceased. Thus, when the vaccine-injured person dies as a result of the vaccine before a compensation judgment is made, an estate's recovery of both the set $250,000 death benefit under § 300aa-15(a)(2) and future lost earnings under § 300aa-15(a)(3)(B) would be duplicative, whereas an estate's recovery of a death benefit and actual lost earnings would not.

This interpretation is also consistent with the availability of recovery under other federal tort liability schemes. For example, the Jones Act, 46 U.S.C. § 30104, which incorporates the Federal Employers' Liability Act ("F.E.L.A."), 45 U.S.C. § 51 *et seq.*, provides that a seaman's right of action for injuries due to negligence survives to the seaman's personal representative. However, the Supreme Court in *Miles v. Apex Marine Corp.*, determined that the estate of a deceased seaman could not recover lost future earnings because it would "be duplicative of recovery by dependents for loss of support in a wrongful death action." 498 U.S. 19, 35 (1990). The court went on to note that "the considered judgment of a large majority of American legislatures is that lost future

income is not recoverable in a survival action." *Id.*; *see also Michigan Central R.R. v. Vreeland*, 227 U.S. 59 (1913) (interpreting F.E.L.A.).

The petitioners argue that our interpretation of § 300aa-15(a)(3)(B) conflicts with our prior decisions in *Zatuchni* and *Edgar*. *Zatuchni,* 516 F.3d 1312; *Edgar,* 989 F.2d 473. As noted above, both the special master and the Claims Court understood *Zatuchni* and *Edgar* to support lost future earnings compensation in this case. We do not agree. Both *Zatuchni* and *Edgar* are fully consistent with our interpretation of § 300aa-15(a)(3).

In *Zatuchni* we held that an estate may recover both the death benefit under § 300aa-15(a)(2) and "compensation . . . for [] vaccine-related injuries during [the injured person's] lifetime, including actual expenses incurred, pain and suffering, and *lost income between the time of the vaccination and [] death*." *Zatuchni*, 516 F.3d at 1315 (emphasis added). In *Zatuchni*, the petitioner, Ms. Snyder, who was forty-five years old when she received the measles, mumps, and rubella vaccine at issue, died as a result of her vaccine-related injury while her petition was pending. *Id.* at 1314. We rejected the Secretary's argument that Ms. Snyder's estate could recover no more than the death benefit under § 300aa-15(a)(2), and awarded recovery for past expenses and losses incurred by Ms. Snyder before her death. Zatuchni, as executrix of the estate, sought compensation for actual amounts that Ms. Snyder would have earned, absent her vaccine-related injury, during the period between her injury in 1992 and her death in 2005. This limited past earnings recovery is consistent with the *Zatuchni*'s rationale for allowing an estate to recover compensation in addition to the death benefit—to make the estate of the deceased whole. *Zatuchni*, 516 F.3d at 1318-19 ("Put simply, the fact that a vaccine-related death followed a vaccine-related injury in a particular case does not alter the fact that certain expenses were incurred, wages lost, or pain and suffering

endured in the interim, and these damages are no less related to or caused by a vaccine-related injury within the meaning of subsections (a)(1), (3), and (4) simply because the vaccine-injured person in question is no longer living.”). Thus, in *Zatuchni* our analysis was limited to whether an estate could recover *past* lost earnings, not future lost earnings.

In *Edgar*, we were asked to evaluate the calculation of the amount of lost future earnings awarded by the Claims Court. 989 F.2d at 473. At the time of her compensation award, Jamie Edgar, approximately age 9, was, as a result of her vaccine-related injury, “in a coma and depend[ed] entirely on hospital staff for her continued care and well-being.” *Id.* at 475. The special master found that Jamie’s lost earnings due to her impairment aggregated to $1,649,119.51 over her expected work-life. *Id.* The Claims Court affirmed the special master’s award of $127,048.00 for lost future earnings, which represented the price of an annuity[2] which was contingent on two conditions: (1) no payments would be made if Jamie died before reaching the age of 18, and (2) payments under the annuity would cease on Jamie’s death, even if the full amount of $1.6 million had not been paid. *Id.* We rejected this conditional approach, because “nothing in [§ 300aa-15(a)(3)(B)] permits the compensation award to be contingent upon the child reaching age 18. In addition, nothing in [§ 300aa-15(a)(3)(B)] authorizes the amount of compensation to be contingent upon the actual, post-injury life of the injured child.” *Id.* at 477.

The circumstances of Jamie in *Edgar* and Elias in the case before us are both tragic, but there is a key differ-

---

[2]    Under the Vaccine Act, future earnings damages are reduced to their net present value and the special master may order the purchase of an annuity for the benefit of the petitioner. *See* 42 U.S.C. § 300aa-15(f)(4)(A).

ence: Jamie was alive, albeit in a coma, at the time of her award, and Elias was not. As the circumstances stood, Jamie had a foreseeable *need* for earnings to provide for her continued living, even if she may never actually recover from her coma and if she may not actually live to the age of 18, while Elias, being deceased, has no similar foreseeable need. On the other hand, Jamie was not entitled to the death benefit under § 300aa-15(a)(2), however unlikely her survival may be from the coma, while Elias' estate has recovered under that subsection. Moreover, *Edgar* was limited to the question of calculating the net present value of a lost earnings award, not whether the petitioner was entitled to the award in the first place. *Edgar* neither mandates nor prohibits future lost earnings in this case.

\* \* \*

The Vaccine Act involves a number of compromises made by Congress in creating the program. In exchange for reduced standards of proof and less adversarial proceedings, the Vaccine Act sets the death benefit at $250,000, without requiring proof of actual wrongful death damages. 42 U.S.C. § 300aa-15(a)(2). Nonetheless, the $250,000 amount set in 1986 may no longer be an appropriate amount for a death benefit. The original version of the Vaccine Act adopted in November 1986 included a provision which would have adjusted the death benefit for inflation. *See* National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, § 2118, 100 Stat. 3743 (1986). That provision was repealed in December 1987. *See* Omnibus Budget Reconciliation Act of 1987, Pub. L. No. 100-203, Title IV, § 4303(d)(2)(B), 101 Stat. 1330 (1987). Attempts have also been made to increase the death benefit. *See* National Vaccine Injury Compensation Program Improvement Act of 2002, H.R. 3741, 107th Cong. § 3 (2002) (increasing death benefit from $250,000 to $300,000); Improved Vaccine Affordability and Availability Act, S. 2053, 107th Cong. § 207 (2002) (increasing

death benefit to $350,000).[3] In a 2002 hearing, Congressman Burton opined that his proposal "increased the amount of death benefits from 250,000 to 300,000, and it hasn't been increased for more than a decade. Inflation alone would require that change . . . ." *Continuing Oversight of the National Vaccine Injury Compensation Program: Hearing before the H. Comm. on Gov't Reform,* 107th Cong. 140 at 76 (2002) (statement of Rep. Dan Burton, Chairman H. Comm. on Gov't Reform). We cannot disturb the legislative choices Congress made in adopting this compensation scheme. Arguments for increasing the death benefit available under the Vaccine Act are properly addressed Congress.

## CONCLUSION

The Tembenis estate has received compensation under §§ 300aa-15(a)(1), (a)(2), and (a)(4). Because the Vaccine Act precludes an award of future lost earnings to an estate of a petitioner who dies prior to the compensation judgment, we reverse the decision of the Claims Court allowing the Tembenis estate to recover lost future earnings under § 300aa-15(a)(3)(B).

**REVERSED**

---

[3]    Other similar bills have been introduced. *See* National Vaccine Injury Compensation Program Improvement Act of 2003, H.R. 1349, 108th Cong. § 3 (2003) (increasing the death benefit to $300,000); National Vaccine Injury Compensation Program Improvement Act of 2005, H.R. 1297, 109th Cong. § 3 (2005) (same); National Vaccine Injury Compensation Program Improvement Act of 2008, H.R. 6391, 110th Cong. §3 (2008) (same); National Vaccine Injury Compensation Program Improvement Act of 2009, H.R. 2459, 111th Cong. § 3 (2009) (same).

COSTS

No costs.